[Civ. No. 17946.   Second Dist., Div. One.   July 30, 1951.]

THE CITY OF LOS ANGELES, Plaintiff and Respondent, v. EMMA M. A. MORGAN et al., Defendants; LOS ANGELES ROCK AND GRAVEL COMPANY (a Limited Partnership), Defendant and Respondent; CATHERINE A. McKENNA, Appellant.

Catherine A. McKenna, in pro. per., for Appellant.

Ray L. Chesebro, City Attorney, and Arthur Wm. Green, Deputy City Attorney, for Plaintiff and Respondent.

Vaughan, Brandlin & Wehrle, Holbrook & Tarr, Lawrence L. Otis, Gilbert E. Harris, James F. Healey, Jr., J. R. Vaughan and Pat B. Trapp for Defendant and Respondent.

HANSON, J. pro tem.—In this action by the city of Los Angeles to condemn a parcel of land, originally subdivided into 39 residential lots, the trial court ruled that respondent, Los Angeles Rock and Gravel Company, a limited partnership, was the absolute owner of the property, and hence entitled to the condemnation award, and that appellant Catherine A. McKenna had no right, title or interest in the property.

The trial court found that the respondent had a perfect title of record deraigned from its predecessor corporations, the initial one having acquired the property prior to 1923 from the then title owners of record. Moreover, the court found that respondent and its predecessors had been in continuous and actual possession of the realty involved for more than 20 years "under claim of right . . ." and had held it "adversely, openly and notoriously without let or hindrance or claim thereto by defendant Catherine A. McKenna, or any other person whomsoever."

The chain of title under which appellant Catherine A. Mc-Kenna claims stems from stray deeds executed by persons who at the time of making the deeds were total strangers to the record ownership of the land purportedly conveyed. In the McKenna chain of title there appear two deeds executed in January, 1923, one by H. B. Hunt and the other by J. W. Wood to a woman by the name of J. Truitt as grantee. Neither one of the grantors had any title of record. The appellant, who appears here in propria persona, testified that the woman J. Truitt was a ''dummy'' who held such ''title'' as she had acquired through the deeds for one Smith, a client of appellant. Shortly after J. Truitt acquired her deeds suit was instituted in February, 1923, in her behalf to quiet her title to the property therein described by an attorney named Trusten P. Dyer, who at the time or very shortly thereafter became a copartner with appellant in the practice of the law. In July, 1923, after the decree had been entered appellant was substituted into the case as cocounsel with Dyer. The predecessor corporation of the respondent, which was the title owner of record of the property, was not named· as a party defendant in the Truitt title quieting action, but purportedly was served under the name of one of the fictitiously named defendant corporations. The sworn return of service of summons in that action made by one Henry Hunt, who was not called as a witness in the instant case or whose absence was not accounted for, states that service was made on one Lewis, vice-president of the Los Angeles Rock and Gravel Company. The trial court in the instant case found that no person by the name of Lewis was ever a vice-president of the corporation or otherwise employed by it and that the return of service was ''wholly and wilfully false, fraudulent and fictitious.''

The decree in the quiet title action signed April 12, 1923, recites that personal service was made as follows: ''Los Angeles Rock and Gravel Co., A Corporation sued under the fictitious name in the complaint of John Green (a corporation), by serving M. Lewis, Vice President of the Corporaation.'' The decree was recorded in the recorder's office on March 27, 1924.

Such interest as the ''dummy'' J. Truitt acquired by the deeds mentioned and through the decree in the quiet title action passed to appellant sometime prior to 1929. What the consideration was is not shown by the evidence in the instant case. During all the years here in question the taxes against the property have been paid by respondent or its predecessors.

Likewise during all those years the appellant has evinced no interest in the property by any claim made to it, although the jury by its condemnation award valued the property at $240,-000. To be sure the appellant made a claim, which the trial court found was spurious—and rightly so—, that appellant in 1929 sold gravel rights, and not the fee, in the lands to respondent's predecessor. Appellant did, in fact, sell gravel rights in a parcel of land—*miles removed*—to respondent's predecessor.

As grounds for reversal appellant contends (1) that the recording on March 27, 1924, in the county recorder's office of the quiet title decree obtained by J. Truitt gave constructive notice of its contents to the Gravel Company, i.e., among other things, that it had been served with process, and if in fact this was untrue it was yet incumbent upon the company to attack the decree within three years for fraud, if fraud there was in obtaining the decree (Code Civ. Proc., § 338, subd. 4) ; (2) that the respondent, when it acquired title by conveyance in 1943 from its immediate predecessor, had constructive notice of the contents of the J. Truitt decree because it was then of record and that title was then vested of record in the appellant by deed to her from J. Truitt; and (3) that the evidence seeking to impeach the sworn return of service and the finding of the court that service had not been made was inadmissible. A recital of the controlling precedents will suffice to answer all the errors assigned.

■ Under the due process clause of the federal Constitution a personal judgment rendered without service of process on, or legal notice to, a defendant is not merely voidable, but void, in the absence of a voluntary appearance or waiver. (*McDonald* v. *Mabee,* 243 U.S. 90 [37 S.Ct. 343, 61 L.Ed. 608].) Such a judgment "is as ineffective in the state [where it is rendered] as it is outside of it." (*McDonald* v. *Mabee, supra.*) ■ If the invalidity of the judgment is apparent by an inspection of the judgment or the judgment roll it may be vacated upon motion at any time after its entry. (*People* v. *Greene,* 74 Cal. 400 [16 P. 197, 5 Am.St.Rep. 448].) ■ If, however, the invalidity is not thus apparent, it may be set aside by motion, if such motion is filed within a reasonable time, i. e., not longer than the time set forth in Code of Civil Procedure, section 473. (*Norton* v. *Atchison etc. R. R. Co.,* 97 Cal. 388 [30 P. 585, 32 P. 452, 33 Am.St.Rep. 198].) ■ Otherwise, the challenge permitted is limited to an action in equity to vacate the judgment. (*People* v. *Davis,* 143 Cal. 673 [77 P. 651].)

Where it is contended, as here, that the court had no jurisdiction to enter the decree for want of service upon respondent's predecessor, evidence is admissible to challenge the fact of service. ■ Ever since the decision in *Lapham* v. *Campbell*, 61 Cal. 296, it has been the accepted rule in this state that a sworn return of service of a summons may be impeached by evidence that contradicts it. ■ As was aptly said by Mr. Justice Vallée in *Sipe* v. *McKenna*, 88 Cal.App.2d 1001 [200 P.2d 61] (in which appellant herein was respondent): "It has long been established that a false affidavit of service constitutes extrinsic fraud. A party is thus prevented from having his day in court. ■ Courts of equity will relieve a party from an unjust judgment rendered against him when, without service of process, either actual or constructive, no opportunity has been given him to be heard in his defense. (*Bernhard* v. *Waring*, 213 Cal. 175, 180 [2 P.2d 32]; *Parsons* v. *Weis*, 144 Cal. 410, 416 [77 P. 1007]; *Herd* v. *Tuohy*, 133 Cal. 55, 62 [65 P. 139]; *Martin* v. *Parsons*, 49 Cal. 94, 100.)"

■ Moreover, the rule is equally well established that in the absence of service of process upon such a party there is no duty on his part even though he has actual knowledge to take any affirmative action at any time thereafter to preserve his right to challenge the judgment. What is initially void is ever void and life may not be breathed into it by lapse of time. In saying this we do not imply that a court of equity may not refuse to exercise its jurisdiction in a proper case by declining to grant affirmative relief. (Restatement, Judgments, § 129.) We have no such case here. ■ Moreover, if a plaintiff chooses to obtain a judgment that is void for want of service of summons upon a defendant, he and his privies may not complain that the law does not subsequently accord to them a so-called "right" which has never existed. (*Cf.* 15 Cal.Jur., Judgments, § 143.)

■ As was said in *Lapham* v. *Campbell*, 61 Cal. 296 at 300: "No one is called to act in a judicial proceeding in which jurisdiction over his person has not been obtained. And although he be a party named in the proceeding, yet if jurisdiction over him be not obtained, he has no duty to perform in relation to the proceeding, for the nonperformance of which he is chargeable with mistake, inadvertence, surprise, or excusable neglect, and, as he is not chargeable with any of those things, he is not called upon to avail himself of any of them as ground for a motion to set aside the judgment; nor is he

chargeable with *laches* or want of diligence for not knowing of the proceedings or judgment. The party procuring a judgment against another without due process of law, or by fraud, takes it at his peril, . . .''

Likewise in *Forbes* v. *Hyde,* 31 Cal. 342, 347 (oftentimes quoted by the Supreme Court) it is said: ''A judgment absolutely void upon its face may be attacked anywhere, directly or collaterally, whenever it presents itself, either by parties or strangers. It is simply a nullity, and can be neither the basis nor evidence of any right whatever.''

Where an action such as the one we have here, has as its objective vacating a judgment for want of jurisdiction of the court to enter it and not because of irregularities in obtaining it, such, for instance, as errors in the exercise of jurisdiction, fraud practiced in procuring the judgment or clerical mistakes therein, neither laches nor the ordinary statutes of limitation may be invoked as a defense. Whether the want of jurisdiction appears on the face of the judgment or is shown by evidence *aliunde,* in either case the judgment is for all purposes a nullity—past, present and future. (*Cf. Hill* v. *City Cab etc. Co.,* 79 Cal. 188 [21 P. 728].) ''Nothing can be acquired or lost by it; it neither bestows nor extinguishes any right . . . It neither binds nor bars anyone. All acts performed under it and all claims flowing out of it are void . . . No action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, no power residing in any legislative or other department of the government, can invest it with any of the elements of power or of vitality.'' (1 Freeman on Judgments, 5th ed., § 322, pp. 643-644.) The rule just quoted applies to void and not voidable judgments. In that connection it is proper to observe that the line is carefully drawn between judgments which are wholly void and those that are merely voidable, i.e., rendered by a court acting within its jurisdiction although in an erroneous manner or as a result of irregularity (1 Freeman on Judgments, 5th ed., § 322, p. 645, n. 16; see, also, 49 C.J.S., p. 878, § 449). Unfortunately, the courts in an endeavor to differentiate between judgments which on their face or on the judgment roll affirmatively disclose their invalidity and those which do not, have described the former as ''void judgments'' and the latter as ''voidable judgments.'' Nevertheless, the courts generally are careful to point out that a judgment shown by evidence to be invalid for want of jurisdiction is a void judgment or at all events has all the attributes

of a void judgment. (*Hill* v. *City Cab etc. Co.,* 79 Cal. 188 [21 P. 728].) In the Restatement of Judgments the phrase "voidable judgments" is not used at all in its classification of judgments. It is not amiss here to add that while the phrase "void judgment" is convenient, it is a contradiction in terms. If a judgment is void it is not a judgment.

▮ An instrument that is void *ab initio* is comparable to a blank piece of paper and so necessarily derives no validity from the mere fact that it is recorded. (*Cf. New England Bond & Mortgage Co.* v. *Brock,* 270 Mass. 107 [169 N.E. 803, 68 A.L.R. 371].) As a consequence the record thereof is not constructive notice of its contents or of the fact that it is actually recorded. ▮ The purpose of our recording statutes (Civ. Code, §§ 1213-1215) is to give notice to prospective purchasers or mortgagees of land of all existing and outstanding estates, titles, or interests in it whether valid or invalid, which may affect their rights as bona fide purchasers and so as to protect them before they part with their money. Accordingly, it is obvious that invalid documents are not entitled to be recorded, but if they are recorded, they do not give constructive notice. (45 Am.Jur. 481; *cf. Meley* v. *Collins,* 41 Cal. 663 [10 Am.Rep. 279] (forged deed).)

To the same effect is *Haight* v. *Vallet,* 89 Cal. 245 [26 P. 897, 23 Am.St.Rep. 465]. In that case the trial court instructed the jury that "A forged deed conveys no title, right or interest; it is absolutely void, and as though never made; except if duly recorded it is constructive notice of that fact." With respect to this instruction the court said: "The latter clause of this instruction is clearly erroneous . . ."

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied August 27, 1951, and appellant's petition for a hearing by the Supreme Court was denied September 27, 1951.