[No. D055200. Fourth Dist., Div. One. July 21, 2010.]

COUNTY OF SAN DIEGO, Plaintiff and Respondent, v.
ARTIS EARL GORHAM, Defendant and Appellant.

**COUNSEL**

Linda Cianciolo for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Paul Reynaga, Sharon Quinn and Marina Linda Soto, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HUFFMAN, J.**—Artis Earl Gorham appeals from an order denying his motions to set aside a 1998 default judgment obtained against him by the County of San Diego Department of Child Support Services (DCSS)[1] and to dismiss the action. He brought his motion to vacate the judgment on grounds the trial court never acquired jurisdiction over him in this case because he was never served with a summons and complaint, contrary to the fraudulent representation of the process server's return, and, therefore, the judgment was void. Further, because the summons and complaint were thus not served on him within three years of the date this action was commenced, Gorham also moved for mandatory dismissal of the case under sections 583.210 and 583.250 of the Code of Civil Procedure.

Under the unique circumstances of this case, we determine the trial court erroneously concluded it was foreclosed from granting the equitable relief requested by Gorham's failure to timely file his motions under various statutory provisions in the Code of Civil Procedure and the Family Code for relief from a void child support default judgment. Because the court never acquired fundamental personal jurisdiction over Gorham in this case, we reverse the order denying his motions and direct the trial court to dismiss this action.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 1997, the DCSS filed a complaint against Gorham to establish paternity, child support, retroactive support and the provision of health insurance for a minor female child born out of wedlock in 1991. On May 19, 1998, the DCSS filed a proof of service signed under penalty of perjury by a registered process server named David Lopez, stating he had personally served Gorham with the summons and complaint in this matter on May 8, 1998, at 7:13 p.m. at 5879 Imperial Avenue, San Diego, California. The DCSS requested entry of default on June 18, 1998, and a notice of the request and date for the hearing on the default matter were mailed to Gorham at the same address where he was allegedly served with the summons and complaint.

---

[1] Before 2000, a special unit of the district attorney's office of each county in California was charged with the duty to enforce child support orders in the interests of the public. (See *San Mateo County Dept. of Child Support Services v. Clark* (2008) 168 Cal.App.4th 834, 839, fn. 2 [85 Cal.Rptr.3d 763] (*Clark*).) Beginning in 2000, this responsibility was transferred to a new county department of child support services. (Fam. Code, § 17304, subd. (a).) Our reference in this opinion to DCSS, the current responsible entity, also refers as well to the former Family Support Division of the San Diego County District Attorney's Office.

On July 15, 1998, the trial court entered a default judgment, finding Gorham was the father of Crystal B. born in June 1991, and ordering him to pay child support of $341 per month beginning November 1, 1997, and to pay arrearages of $12,276 for child support for the previous three-year retroactive period at $100 per month beginning August 1, 1998. The court also ordered Gorham to provide health insurance coverage for Crystal and issued a wage and earnings assignment order to attach any income of Gorham's to satisfy his obligations.

On March 13, 2002, Gorham appeared at the DCSS offices and met with a caseworker who advised him that there was another default judgment against him besides the one he was aware of for the support of his son from another relationship. The caseworker did a postdefault review with Gorham regarding the known case involving his son, reaching a compromise for amounts owed, including an accord for "zero" arrearages for periods "7/1/96–7/31/96, 6/1/97–6/30/97, and 2/1/98–10/31/98" due to Gorham's incarceration. The caseworker was not able to do a review of this case with Gorham because "aid had closed" with regard to Crystal on "8/31/00." The caseworker advised Gorham to consult with the local family law facilitator for assistance in filing a motion to contest the default judgment entered regarding this case.

Subsequently, on July 22, 2002, and again in May, June and July 2003, DCSS received money from an intercept of Gorham's unemployment insurance benefits, which the agency allocated to his support obligations in both cases.

In December 2007, while incarcerated at Kern Valley State Prison, Gorham received a statement from the DCSS, claiming he owed in excess of $58,000 for unpaid child support in this case. He was released from prison on January 22, 2008. On April 24, 2008, Gorham specially appeared through counsel to file the subject motions to set aside the 1998 default judgment based on fraudulent service and for dismissal of the underlying complaint. In his attached declaration, Gorham conceded he had lived for one month in 1997 (May to June) at the address where he was purportedly served, but claimed he did not live there at the time of the alleged service. More importantly, regardless of the address, Gorham claimed he had not been personally served on May 8, 1998, as stated in the proof of service because he was incarcerated on that date, and he had never been served the complaint within three years of the date of commencement of this action. In support of his claim of incarceration, Gorham attached copies of court minutes from April 27, 1998, and May 26, 1998, respectively, showing his guilty plea and sentencing in San Diego Superior Court case *People v. Gorham* (1998, No. SCD134882), as well as six pages of his incarceration history.

In its opposition, the DCSS argued Gorham had not adequately rebutted the presumption in favor of legitimate service because it had obtained the address where Gorham had been served from California's Department of Motor Vehicles records, which listed it as his valid address for service of process (Veh. Code, § 1808.21, subd. (c)), and the April 27, 1998 minutes indicated that Gorham had been remanded to the custody of the county sheriff with bail set at $10,000 and there was no showing whether Gorham had posted bail and had been released before the sentencing hearing in that criminal case.

At the May 29, 2008 hearing on the matter, in response to Gorham's argument that his constitutional rights to due process were never met because the court did not obtain personal jurisdiction over him in the complete absence of being served a summons, the DCSS argued that even assuming ineffective service and a void judgment, Family Code section 3691 controlled to preclude Gorham's motions because he did not act within the reasonable time stated in that section to vacate the default judgment, i.e., within six months after he learned of the judgment in March of 2002. The court continued the matter so that the parties could file points and authorities on the application to this case of Family Code section 3691.

At the continued hearing, the court noted it was struggling with the issues in this case because of the finality of judgment rule and the public policy of supporting children and the fact that because Gorham had spent most of the time incarcerated, had he "been participating all along chances of there being a support order [would have been] nil." Although the court did not believe Gorham had ever been served, noting it did "not believe that David Lopez even made an attempt to serve him in this case [and that] he fraudulently signed that proof of service," it expressed concern with Gorham's inaction to set the matter aside until 2008 after becoming aware of the default judgment in 2002 when he went into the DCSS offices. The court requested further briefing on the issue of whether it ever had jurisdiction over Gorham and whether Family Code section 3691 applied to foreclose a remedy in this case.

At the October 31, 2008 hearing, the court announced its tentative decision to dismiss the proceeding based on case authority regarding fraudulent service that precluded a finding of personal service and jurisdiction, especially because of its knowledge of the David Lopez problem regarding service. However, after hearing opposition to the tentative and further argument from Gorham, the court took the matter under submission with the parties' agreement it would take judicial notice of Gorham's 1998 criminal file to see if the documents could verify whether Gorham had posted bail and

was out of custody on the day the proof of service alleged he had been personally served at home.

After considering Gorham's objections to its proposed statement of decision, on March 11, 2009, the court issued a final statement of decision and order denying Gorham's motions as untimely under statutory law to set aside void judgments and to dismiss cases. In doing so, the court specifically found Gorham had rebutted the facts stated in the proof of service because the evidence showed he had been incarcerated at the time he was alleged to have been personally served, which rendered the default judgment in this matter void for lack of personal jurisdiction. It also found that a false proof of service, as in this case, constitutes extrinsic fraud.

Nonetheless, the court determined that Gorham's motion to vacate a void judgment when the defect, as here, is not apparent from the record, was untimely if sought under the Code of Civil Procedure (§ 473.5, subd. (a)), because it was not brought within the required reasonable time not to exceed two years after the entry of judgment. If sought under its equity authority, the court found that Gorham's motion to vacate the judgment was still not made within a reasonable time because he had not acted promptly after learning of the default judgment in 2002 and that setting it aside would significantly impair the substantial interests of both the county and Crystal's mother. The court stated that although it was aware of problems with the process server involved in this case, the evidence was insufficient to show that the proof of service, although false, was "intentionally" or "willfully" false.

The court further ruled that any traditional equitable set-aside relief had been statutorily preempted regarding support orders by Family Code section 3691, which it gleaned provided for the exclusive remedy for such orders after the time limits in the Code of Civil Procedure had run. The court noted that to be timely under Family Code section 3691, subdivision (a), Gorham's claim of relief based on actual fraud would have had to have been brought within six months after he discovered the fraud or reasonably should have discovered it in March 2002, or if based on lack of notice under subdivision (c)(1) of Family Code section 3691, would have had to have been brought within six months of obtaining notice of the support order or notice of the order attaching his income and assets. The court found that under either theory, Gorham was at least six years too late.

Although the court recognized that due process concerns are implicated when a service of summons has not been served at all, it believed these concerns were addressed by Family Code section 3691, which it found

embodied the policy of finality of judgments and restored "the long-held equitable requirement that a party may not sleep on its rights." The court made no finding with respect to the propriety of Gorham filing an independent action in equity to challenge the void judgment.

Finally, the court found that Gorham's request for dismissal under Code of Civil Procedure section 583.210 was untimely because it was not brought within six months.

Gorham timely appealed from the court's final statement of decision and order denying his motions.

## DISCUSSION

On appeal, Gorham contends the trial court abused its discretion when it failed to set aside his 1998 default judgment for paternity and child support after correctly finding that the judgment was void. Gorham essentially raises the same arguments as he raised below, claiming the court lacked personal jurisdiction over him in this case because he was never served with the summons and complaint and the default judgment was entered purely on a false return of service, which constituted extrinsic fraud for which the court had authority to set aside at any time by motion or an independent action in equity. We agree the court abused its discretion in denying Gorham's motions to vacate the 1998 void judgment and to dismiss this action.

*Jurisdiction, Statutory Background and Standard of Review*

■ Courts generally refer to jurisdiction over the parties and subject matter in any action as "fundamental jurisdiction," and where this is lacking there is an entire absence of power to hear or determine the case. (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 538 [66 Cal.Rptr.3d 175] (*Thompson Pacific*).) Under such circumstances, "an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack *at any time*.' " (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 [16 Cal.Rptr.3d 76, 93 P.3d 1020], italics added.)

On the other hand, "[a]n excess of jurisdiction is typically described as the case ' "where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." ' [Citation.]"

(*Thompson Pacific, supra,* 155 Cal.App.4th at p. 537.) "Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of stare decisis, are in excess of jurisdiction, in so far as that term is used to indicate that those acts may be restrained by prohibition or annulled on certiorari." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 291 [109 P.2d 942], italics omitted.) In contrast with judgments lacking fundamental jurisdiction, judgments or orders in excess of jurisdiction are valid unless attacked. (*Thompson Pacific, supra,* 155 Cal.App.4th at p. 537.)

■ Although courts have often also distinguished between a judgment void on its face, i.e., when the defects appear without going outside the record or judgment roll, versus a judgment shown by extrinsic evidence to be invalid for lack of jurisdiction, the latter is still a void judgment with all the same attributes of a judgment void on its face. (*Los Angeles v. Morgan* (1951) 105 Cal.App.2d 726, 732–733 [234 P.2d 319] (*Morgan*).) "Whether the want of jurisdiction appears on the face of the judgment or is shown by evidence *aliunde*, in either case the judgment is for all purposes a nullity—past, present and future. [Citation.] '. . . All acts performed under it and all claims flowing out of it are void . . . [.] No action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, no power residing in any legislative or other department of the government, can invest it with any of the elements of power or of vitality.' [Citation.]" (*Id.* at p. 732.) In such cases, the judgment or order is wholly void, although described as "voidable" because court action is required to determine the voidness as a matter of law, and is distinguishable from those judgments merely voidable due to being in excess of the court's jurisdiction. (*Ibid.*) Consequently, once proof is made that the judgment is void based on extrinsic evidence, the judgment is said to be equally ineffective and unenforceable as if the judgment were void on its face because it violates constitutional due process. (See *Peralta v. Heights Medical Center, Inc.* (1988) 485 U.S. 80, 84 [99 L.Ed.2d 75, 108 S.Ct. 896] (*Peralta*).)

■ Consistent with these general principles, "[a] judgment is void for lack of jurisdiction of the person where there is no proper service of process on or appearance by a party to the proceedings." (*David B. v. Superior Court* (1994) 21 Cal.App.4th 1010, 1016 [26 Cal.Rptr.2d 586].) Knowledge by a defendant of an action will not satisfy the requirement of adequate service of a summons and complaint. (*Waller v. Weston* (1899) 125 Cal. 201 [57 P. 892]; *Renoir v. Redstar Corp.* (2004) 123 Cal.App.4th 1145, 1152–1153 [20 Cal.Rptr.3d 603].) Because the "total absence of notice in any form cannot comport with the requirements of due process" (*In re B. G.* (1974) 11 Cal.3d

679, 689 [114 Cal.Rptr. 444, 523 P.2d 244]), it has been said that a judgment of a court lacking such personal jurisdiction is a violation of due process (*Burnham v. Superior Court of Cal., Marin County* (1990) 495 U.S. 604, 609 [109 L.Ed.2d 631, 110 S.Ct. 2105]), and that "a default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute [to establish personal jurisdiction] is void." (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1444 [29 Cal.Rptr.2d 746].)

■ Specifically, in any action "to enforce a duty of support or some other personal obligation growing out of the parent-child relationship, personal jurisdiction over [a] defendant [is] essential." (*Hartford v. Superior Court* (1956) 47 Cal.2d 447, 454 [304 P.2d 1].) In other words, even though a statutory scheme may empower the trial court to determine paternity and child support in a family law matter, such power only extends "to parties over whom it has personal jurisdiction." (*Clark, supra*, 168 Cal.App.4th at pp. 843–844, citing *In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, 592–594 [7 Cal.Rptr.3d 701] [court must have personal jurisdiction over parties in marital case in order to adjudicate personal rights and obligations].)

■ As noted earlier, this case initially was filed under former statutory provisions empowering the district attorney's office of each county to establish, modify and enforce child support orders to recoup public assistance costs from the absent parents of minor children receiving public aid " ' "in the name of the county on behalf of the child, children or caretaker parent." ' " (*Jager v. County of Alameda* (1992) 8 Cal.App.4th 294, 297 [10 Cal.Rptr.2d 293].) The summary procedures set forth under the former provisions as well as the new Family Code sections, if properly followed, do not violate the fundamental requirement of due process because they provide a defendant parent with an opportunity to be heard "before a judgment is entered." (*County of Yuba v. Savedra* (2000) 78 Cal.App.4th 1311, 1324–1325 [93 Cal.Rptr.2d 524] (*Savedra*).) A default order or judgment, however, may only be entered in such a case if a proof of service is filed "evidencing that more than 30 days have passed since the simplified summons and complaint, proposed judgment, . . . and all notices required by this division *were served on the defendant*." (Fam. Code, § 17430, subd. (a), italics added [replacing Welf. & Inst. Code, former § 11355 (Stats. 1999, ch. 478, § 1, p. 3129, as amended by Stats. 1999, ch. 480, § 17, p. 3260, Stats. 1999, ch. 652, § 17.5, p. 4676, Stats. 2000, ch. 808, § 85)].) Thus, where the defendant parent establishes that he or she has not been served as mandated by the statutory scheme, no personal jurisdiction by the court will have been obtained and the resulting judgment will be void as violating fundamental due process. (See *Peralta, supra*, 485 U.S. at p. 84.)

■ Although a judgment or order that is invalid or void on its face for lack of personal jurisdiction may be directly or collaterally attacked at any time, California cases have generally precluded collateral attack where the invalidity of the judgment or order, as in this case, does not appear on its face even though the effect of the voidness, as noted above, is the same. (See *People v. Davis* (1904) 143 Cal. 673, 675 [77 P. 651]; *Morgan, supra,* 105 Cal.App.2d at pp. 730–733.) If the invalidity does not appear on its face, the judgment or order may be attacked either in an independent equitable action without time limits (*Groves v. Peterson* (2002) 100 Cal.App.4th 659, 670, fn. 5 [123 Cal.Rptr.2d 164]), or by motion in the action in which the judgment or order was entered, usually made under a statute providing for such relief within certain time limits or a reasonable time.[2] "A motion to vacate a void judgment is a direct attack. [Citations.] '[O]n direct attack, lack of jurisdiction may be shown by extrinsic evidence, i.e., evidence outside the judgment roll.' " (*Strathvale Holdings v. E.B.H.* (2005) 126 Cal.App.4th 1241, 1249 [25 Cal.Rptr.3d 372].)

■ Moreover, even where relief is no longer available under statutory provisions, a trial court generally retains the inherent power to vacate a default judgment or order on equitable grounds where a party establishes that the judgment or order was void for lack of due process (*Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 488 [229 Cal.Rptr. 771]) or resulted from extrinsic fraud or mistake (*In re Marriage of Melton* (1994) 28 Cal.App.4th 931, 937 [33 Cal.Rptr.2d 761]). Extrinsic fraud occurs when a party is

---

[2] In addition to the general statutes that provide a basis for relief from a default judgment or order against a party in any civil case (i.e., Code Civ. Proc., § 473, subd. (b) [authorizing relief from a judgment or order taken against a party as a result of his or her "mistake, inadvertence, surprise, or excusable neglect" on an application for such relief made within a reasonable time not to exceed six months]; Code Civ. Proc., § 473.5, subd. (a) [authorizing relief from a void judgment on application for such relief within a reasonable time not exceeding two years from entry of the default judgment]), various Family Code statutes specifically provide a basis for possible relief from such default judgment or order entered against a party in a family law proceeding. (See Fam. Code, § 2122 [authorizing a court to set aside certain child support orders stemming from a dissolution proceeding for actual fraud, perjury, duress, mental incapacity or mistake of law or fact provided application therefore is made within a specified time period]; Fam. Code, § 3691, subds. (a), (b) & (c) [authorizing relief from a judgment or order taken against a party for actual fraud, perjury or lack of notice provided application is made within a reasonable time, but no later than six months after the party discovers or reasonably should have discovered the fraud, perjury or lack of notice of the support order or knowledge that the party's income and assets were subject to attachment per that order]; Fam. Code, §§ 7646, 7647 [authorizing relief from a judgment or order establishing paternity under certain circumstances and provided application is made within specified time limits]; Fam. Code, § 17432 [authorizing relief from a support judgment or order in local support agency proceeding that is based on presumed income, where relief is sought within one year of first collection under such judgment or order]; Fam. Code, § 17433 [authorizing relief from a support judgment or order in local agency proceeding when there is proof the party was mistakenly identified as having the obligation to provide support].)

deprived of the opportunity to present a claim or defense to the court as a result of being kept in ignorance or in some other manner being fraudulently prevented by the opposing party from fully participating in the proceeding. (*Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 26–27 [116 Cal.Rptr.2d 583].) "Extrinsic mistake is found when [among other things] . . . a mistake led a court to do what it never intended . . . ." (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471–472 [82 Cal.Rptr. 489, 462 P.2d 17].)

In addition to providing proof that a judgment or order is void, a false return of summons may constitute both extrinsic fraud and mistake. (See *Munoz v. Lopez* (1969) 275 Cal.App.2d 178, 181 [79 Cal.Rptr. 563] (*Munoz*).) When a judgment or order is obtained based on a false return of service, the court has the inherent power to set it aside (*In re Marriage of Smith* (1982) 135 Cal.App.3d 543, 555 [185 Cal.Rptr. 411]), and a motion brought to do so may be made on such ground even though the statutory period has run (*Munoz, supra,* 275 Cal.App.2d at pp. 182–183 [an equitable attack to set aside a judgment or order "for lack of jurisdiction of the cause where that jurisdiction is in turn dependent on personal service on the defendant who at the later date seeks to question that service" is not precluded by any set time]).

As already noted above, where it is shown that there has been a complete failure of service of process upon a defendant, he generally has no duty to take affirmative action to preserve his right to challenge the judgment or order even if he later obtains actual knowledge of it because "[w]hat is initially void is ever void and life may not be breathed into it by lapse of time." (*Morgan, supra,* 105 Cal.App.2d at p. 731.) Consequently under such circumstances, "neither laches nor the ordinary statutes of limitation may be invoked as a defense" against an action or proceeding to vacate such a judgment or order. (*Id.* at p. 732.) And, where evidence is admitted without objection that shows the existence of the invalidity of a judgment or order valid on its face, "it is the duty of the court to declare the judgment or order void." (*Thompson v. Cook* (1942) 20 Cal.2d 564, 569 [127 P.2d 909] (*Cook*).)

Nonetheless, a court sitting in equity in such situation may "refuse to exercise its jurisdiction in a proper case by declining to grant affirmative relief" (*Morgan, supra,* 105 Cal.App.2d at p. 731), such as where "(1) The party seeking relief, after having had actual notice of the judgment, manifested an intention to treat the judgment as valid; and [¶] (2) Granting the relief would impair another person's substantial interest of reliance on the judgment." (Rest.2d Judgments, § 66.) Because of the strong public policy in favor of the finality of judgments, equitable relief from a default judgment or

order is available only in exceptional circumstances. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982 [35 Cal.Rptr.2d 669, 884 P.2d 126] (*Rappleyea*).)

We review the court's denial of a motion for equitable relief to vacate a default judgment or order for an abuse of discretion, determining whether that decision exceeded the bounds of reason in light of the circumstances before the court. (*Rappleyea, supra*, 8 Cal.4th at p. 981.) In doing so, we determine whether the trial court's factual findings are supported by substantial evidence (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1360 [119 Cal.Rptr.2d 430]) and independently review its statutory interpretations and legal conclusions (*Holmes v. Jones* (2000) 83 Cal.App.4th 882, 888 [100 Cal.Rptr.2d 138]; *PJNR, Inc. v. Department of Real Estate* (1991) 230 Cal.App.3d 1176, 1183 [281 Cal.Rptr. 673]).

*Analysis*

In applying the above principles here, we conclude this is a case of exceptional circumstances where equitable relief is warranted. Gorham did not seek relief from the default judgment pursuant to any statutory scheme, but rather, directly attacked it for lack of personal jurisdiction due to fraudulent service, similar to the situation in *Morgan, supra*, 105 Cal.App.2d 726. Based on extrinsic evidence, which the DCSS agreed could be considered, the trial court found Gorham had rebutted the facts stated in the proof of service filed under penalty of perjury that he had been personally served with the complaint and summons in this case. Because Gorham was incarcerated at the time he was said to have been served, the court found the proof of service was false and consequently the default judgment was void. These findings are fully supported by the record and law and are not challenged on appeal.

In simple terms, the legal consequence of these findings is that the trial court never acquired personal jurisdiction over Gorham in this action for the purposes of establishing paternity and child support. As the above cases have shown, the filing of a false proof of service based on perjury by the process server to acquire personal jurisdiction over a party is different from other forms of fraudulent acts that may lead to a judgment in the action. (*Cook, supra*, 20 Cal.2d at p. 569; *Munoz, supra*, 275 Cal.App.2d at pp. 182–183.) Because Gorham was never served with the complaint and summons, or other documents and notices as required by the statutory procedures used by the DCSS to commence this action against him, the trial court never obtained personal jurisdiction over him (*Morgan, supra*, 105 Cal.App.2d at pp. 732–733), and the resulting default judgment was, and is, therefore void, not merely voidable, as violating fundamental due process.

Although the trial court correctly declared the default judgment void, it declined to vacate the judgment and dismiss the complaint and summons although they have never been served on Gorham because it construed the law as requiring his motion to be brought within certain statutory times, particularly the time limits in Family Code section 3691,[3] or made within a reasonable time to confer it with jurisdiction to act on his motion. However, as already mentioned above, because Gorham established through extrinsic evidence that the default judgment was void for want of personal jurisdiction over him, it had the same effect as if it had been void on its face and the court had the inherent power to set it aside even though any statutory periods had run. (*Cook, supra,* 20 Cal.2d at p. 569; *Munoz, supra,* 275 Cal.App.2d at pp. 182–183; *Morgan, supra,* 105 Cal.App.2d at p. 732.)

The court disagreed with this conclusion because it found no evidence in the record that the false proof of service had been willfully or intentionally filed by the process server. However, in light of this record, we cannot accept the court's finding as supported by the evidence. The record shows the parties and court were well aware of problems with the validity of proofs of service filed by Lopez in DCSS cases, that Lopez had declared under penalty of perjury that he had served Gorham at an address where Gorham proved he had not lived for almost a year, and had made the false declaration at a time Gorham was in custody in jail. That Lopez then filed the proof of service, which was based on his own perjury, in the absence of evidence showing any

---

[3] Family Code section 3691 provides: "The grounds and time limits for an action or motion to set aside a support order, or any part or parts thereof, are governed by this section and shall be one of the following: [¶] (a) Actual fraud. Where the defrauded party was kept in ignorance or in some other manner, other than his or her own lack of care or attention, was fraudulently prevented from fully participating in the proceeding. An action or motion based on fraud shall be brought within six months after the date on which the complaining party discovered or reasonably should have discovered the fraud. [¶] (b) Perjury. An action or motion based on perjury shall be brought within six months after the date on which the complaining party discovered or reasonably should have discovered the perjury. [¶] (c) Lack of Notice. [¶] (1) When service of a summons has not resulted in notice to a party in time to defend the action for support and a default or default judgment has been entered against him or her in the action, he or she may serve and file a notice of motion to set aside the default and for leave to defend the action. The notice of motion shall be served and filed within a reasonable time, but in no event later than six months after the party obtains or reasonably should have obtained notice (A) of the support order, or (B) that the party's income and assets are subject to attachment pursuant to the order. [¶] (2) A notice of motion to set aside a support order pursuant to this subdivision shall be accompanied by an affidavit showing, under oath, that the party's lack of notice in time to defend the action was not caused by his or her avoidance of service or inexcusable neglect. The party shall serve and file with the notice a copy of the answer, motion, or other pleading proposed to be filed in the action. [¶] (3) The court may not set aside or otherwise relieve a party from a support order pursuant to this subdivision if service of the summons was accomplished in accordance with existing requirements of law regarding service of process."

mistake or excuse in doing so, constitutes evidence of an intentional false act that was used to obtain fundamental jurisdiction over Gorham.

 Moreover, contrary to the trial court's determination, we decline to interpret Family Code section 3691 as preempting a trial court's traditional or inherent equitable power to set aside a child support order or judgment like the one in this case, which concerns both paternity and child support obtained by a local DCSS, and is entered against a party over whom the court has not acquired personal jurisdiction because no notice was given as required under the pertinent statute. The legislative history regarding Family Code section 3691 reveals it was enacted as part of the Child Support Enforcement Fairness Act of 2000 (Fairness Act) with the purpose of expanding, not limiting, avenues of relief from child support orders obtained by default judgments for obligors who have not received notice of the order or who have been mistakenly identified as an obligor, to prevent the accumulated amount of arrearages, which discourages timely compliance with child support orders, particularly for low-wage earners. (Stats. 1999, ch. 653, § 1, p. 4708.) The Legislature specifically declared, "[t]he efficient and fair enforcement of child support orders is essential to ensuring compliance with those orders and respect for the administration of justice." (*Ibid.*) Thus to construe Family Code section 3691 as foreclosing a party from seeking equity where the party's "jurisdiction" in a paternity/support case filed by a local child support agency has been obtained by a false proof of service, which essentially perpetrates a fraud on the court would, we believe, be unfair, against the above intent of the Legislature, and a violation of fundamental due process.

 In addition, subdivision (c) of section 3690 of the Family Code, enacted as part of the Fairness Act, provides that nothing in that article, which includes Family Code section 3691, "shall limit or modify the provisions of [Family Code] Section 17432 or 17433," also enacted as part of the Fairness Act, which outline additional grounds and other time limits for setting aside defaults entered in actions filed by a local child support agency under Family Code section 17400, 17402, or 17404. Although Family Code section 17432, which is relevant to this case, only provides for relief from the child support order portion of the default judgment if certain time limits are met, such section also places a duty on the agency, within three months of receiving the first collection for any child support order based on presumed income under those Family Code sections, to "check all appropriate sources for income information, and if income information exists, the local child support agency *shall* make a determination whether the order qualifies for set aside under this section. If the order qualifies for set aside, the local child support agency *shall* bring a motion for relief under this section." (Fam. Code, § 17432, subd. (g), italics added.)

The DCSS acknowledged in its opposition to Gorham's motion below that it had proceeded against him under Family Code section 17400 et seq. to determine paternity and support because Crystal's mother was receiving public assistance for the minor child born out of wedlock and that the default judgment set amounts for child support for Crystal based on a presumed income for Gorham. Had the DCSS fulfilled its mandated duty to check into the matter when it first received a payment from Gorham's attached unemployment wages in July 2002, it would have discovered that Gorham had been sent back to prison that same month and that there was something very wrong with the proof of service filed in this case to obtain jurisdiction for the child support order in the first instance because its records showed that Gorham had also been in custody from "2/1/98–10/31/98." The DCSS would have then been required to file a motion for relief from the default judgment or to at least modify the child support portion of the judgment. Had it done so, it would have discovered the false proof of service and the matter could have been timely resolved consistent with the intent of the Fairness Act.

Clearly, the trial court was troubled with the fact of Gorham's lengthy periods of incarceration, the false proof of service, and whether it could sit in equity in this case in light of Family Code section 3691. Unfortunately, based on its unsupported finding that the perjury of the proof of service and its filing were not shown to be intentional, the court proceeded down an analytical path requiring Gorham to show due diligence within a statutory time or a reasonable time to respond to a default judgment he never received and in a case never served on him. As already discussed, such analysis was unwarranted in this case where fundamental jurisdiction was obtained through an intentional fraud on the court.

Additionally, we find no evidence in the record to support the court's finding that Gorham acquiesced to the July 2002 payment collected by the DCSS and thereby "apparently treat[ed] the [default] judgment as enforceable." Even accepting that Gorham had actual notice of the default judgment involving Crystal through his March 2002 meeting at the DCSS office with a caseworker, the fact that his income from unemployment benefits was attached in July 2002 by the DCSS, which then credited part to this default judgment and part to another default judgment, does not show a manifestation of an intent on Gorham's part to treat this judgment as valid. Rather, because the notes of that meeting show that Gorham was told the caseworker could not discuss this default judgment due to the aid to Crystal having been "closed" in 2000, that Gorham was advised to talk to a family law facilitator when he said he was going to challenge the judgment, and that the DCSS worker only discussed and reached an agreement with Gorham for the amount of support due under another default judgment involving his son, we believe Gorham most likely thought the attached payment was for his other

default judgment. Under such circumstances, although there might be evidence of the DCSS's intent to treat the judgment as enforceable in this case, we cannot find the evidence shows Gorham manifested any intent to treat this judgment as valid.

 Nor is the court's legal finding that a request for dismissal under Code of Civil Procedure section 583.210 is untimely because it was not brought within six months supported by the law. That section provides a statutory obligation to return the summons to an issuing court within three years 60 days after the action was commenced as determined by the date the complaint was filed. (Code Civ. Proc., § 583.210; see *Biss v. Bohr* (1995) 40 Cal.App.4th 1246, 1250–1251 [47 Cal.Rptr.2d 692].) Because the trial court specifically found that Gorham had never been served with the summons and complaint filed October 15, 1997, and that the default judgment had been obtained by a false proof of service, the dismissal requested was mandatory. (See *Dale v. ITT Life Ins. Corp.* (1989) 207 Cal.App.3d 495, 500–503 [255 Cal.Rptr. 8].)

Although we are mindful of the strong policy favoring finality of judgments, and the strong public interest "in making certain that those parents who are able to support their children do so, thus freeing the government from shouldering that burden" (*Savedra, supra*, 78 Cal.App.4th at p. 1325), we will not compound the miscarriage of justice in this case created by the lack of fundamental due process stemming from the false proof of service filed by the DCSS that essentially deprived Gorham "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333 [47 L.Ed.2d 18, 96 S.Ct. 893].)[4]

 In sum, under the unique facts of this case, we conclude that once the court determined the default judgment was void as a matter of law based on the lack of personal jurisdiction, it was required to dismiss this action. By not doing so, the court abused its discretion.

---

[4] Ironically, the DCSS contends that should this court find grounds to reverse the trial court's denial to vacate the default judgment entered against Gorham and to dismiss this action, we cannot do so without first giving Crystal notice to be heard in opposition because she is now an adult and an indispensible party regarding not only the child support order but also the paternity finding. For this issue raised for the first time on appeal, the DCSS relies on authority concerning an independent action to declare paternity under the Uniform Parentage Act (Fam. Code, § 7600 et seq.) and not for actions filed by the DCSS to determine paternity as necessary to establishing child support obligations of a noncustodial parent for a child born out of wedlock who had been receiving public assistance as in this case. (See Fam. Code, §§ 17304, 17400, 17402, 17404.) Such derivative action does not preclude the child from bringing her own action for paternity. (See Fam. Code, § 7635; *County of Shasta v. Caruthers* (1995) 31 Cal.App.4th 1838 [38 Cal.Rptr.2d 18].)

## DISPOSITION

The order denying Gorham's motions is reversed. On remand, the trial court is directed to dismiss this action in accordance with this opinion. Each side to bear its own costs on appeal.

Benke, Acting P. J., and Nares, J., concurred.