Filed 9/30/15  Bhatia v. Singha CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SABEER BHATIA,<br><br>        Cross-complainant and Respondent,<br><br>v.<br><br>NAVEEN SINGHA,<br><br>        Cross-defendant and Appellant. | A143193<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-10-496945) |

The trial court entered a default judgment against cross-defendant Naveen Singha after he failed to respond to a cross-complaint.  Singha's subsequent motion to vacate the default was denied on evidence he had been properly served, never responded, and provided no cognizable grounds for granting relief from his default.  Singha contends the court clerk improperly entered his default, he was not served, and his former attorney's failure was the cause of his default.  Finding no merit to these contentions, we affirm.

## I.  BACKGROUND

On February 18, 2010, Sabeer Bhatia filed this action against East West Bank (bank), a lender to an entity formed by Bhatia and Singha to invest in real estate.  The complaint alleged the bank had improperly permitted Singha to borrow funds on behalf of the entity and Singha had embezzled most of those funds.  On July 2, 2010, the bank filed a cross-complaint against Bhatia and Singha to collect on certain guaranties.  The docket for the action contains a proof of service of the cross-complaint on Singha in July 2010, but Singha later claimed not to have been aware of the action until

February 2011. In any event, he appears never to have responded to the bank's initial cross-complaint.

In December 2011, the bank was granted leave to file a first amended cross-complaint (hereafter cross-complaint or First Amended Cross-complaint). In February 2012, the bank filed a proof of service of the "[PROPOSED] FIRST AMENDED CROSS-COMPLAINT OF DEFENDANT/CROSS-COMPLAINANT EAST WEST BANK AGAINST CROSS-DEFENDANTS SABEER BHATIA, NAVEEN SINGHA AND ROES 1-30 FOR BREACH OF GUARANTIES," reflecting personal service on Singha at 7:50 p.m. on January 13, 2012, at 311 Marina Boulevard in San Francisco. Over a year later, in February 2013, Bhatia was substituted as cross-complainant on the cross-complaint's claims against Singha, based on the bank's assignment of its claims to Bhatia as part of a settlement. At the time, Singha had not appeared in the action. In June 2013, Bhatia filed a request for entry of Singha's default on the cross-complaint, and the default was entered. In February 2014, after a prove up hearing, the trial court entered a default judgment in excess of $9 million against Singha.

The next month, Singha filed a motion to vacate the default and quash the service of summons. The motion argued the clerk of court erred in entering Singha's default because the proof of service reflected service of a "[Proposed] First Amended Cross-complaint . . . ," rather than a "First Amended Cross-complaint . . . ."[1] Singha contended the discrepancy rendered the entry of default "void on its face." He also claimed never to have been served with the cross-complaint and asserted "extrinsic mistake," based on his belief that a former attorney "was taking the appropriate steps" to defend the action.

Singha submitted a declaration in support of the motion to vacate. He acknowledged residing at the Marina Boulevard address at the time service was made, but he claimed "there were numerous people in and out" of the home then. He denied being served and said he was never made aware of the cross-complaint having been

---

[1] As noted above, the actual title of the document filed and served was much longer than "First Amended Cross-complaint." For brevity's sake, we will refer to the full title with the abbreviation "First Amended Cross-complaint . . . ."

2

received by anyone else at the home. Singha moved from Marina Boulevard in March 2012, and began living with his sister. In September 2012, he hired attorney David Nemecek, who appeared in three other lawsuits to which Singha was a party and obtained an order consolidating them. According to Singha, "[t]he scope of Mr. Nemecek's representation also specifically included dealing with the East West Bank case," and it was Singha's "understanding" that Nemecek would either "negotiate" with the bank's attorney or "file an answer and . . . defend the case. I now know that he did not do so." Nemecek withdrew from the representation in March 2013. Although a copy of the request to enter Singha's default was sent to Singha at his sister's home in March 2013, he had moved out by then and did not receive the notice.

Singha's present attorney, Ann McFarland Draper, also filed a declaration. She stated that she spoke with the bank's attorney in February 2011, regarding Singha's failure to respond to the original cross-complaint filed by the bank. Draper eventually was told by the bank's attorney that it would be filing the First Amended Cross-complaint. Although Draper continued to deal with the attorney and received copies of documents filed in the action, he never told her that Singha had been served and did not inquire regarding Singha's failure to respond. It was not until late January 2014 that Draper "began to realize that there may have been a default taken in this case," but she was too busy to inquire further at that time.

With his opposition to the motion to vacate, Bhatia submitted a declaration by Gonzalo Lazalde, the process server who had executed the proof of service of the cross-complaint. Lazalde is a registered process server with over 25 years' experience. His declaration attached a copy of the documents he served on Singha. The copy of the cross-complaint was filed stamped by the clerk of court and was entitled, "[Proposed] First Amended Cross-complaint . . . ." According to Lazalde, this was identical to the document that was filed, but the court clerk had crossed out the word "[Proposed]" on the copy of the cross-complaint accepted for filing and failed to do so on the conformed copies, one of which was served. He described this as a "not unusual" occurrence.

3

Lazalde said it took five attempts to find Singha at home. When he finally accomplished service, a "middle-age somewhat heavy-set male who appeared to be of Indian origin answered the door," admitted to being Naveen Singha, and said, " 'you finally got me' or words to that effect." Singha is five feet seven and a half inches tall and weighs 172 pounds.

The trial court held an evidentiary hearing on the motion to vacate at which Singha and Lazalde testified. Singha denied being served with the cross-complaint. Although in the Marina District on the evening listed on the proof of service, Singha said he was frequently in a local coffee house. As a result, he was unable to say whether or not he was at home at the time of Lazalde's purported service. More than four people were living in the home then, the others being "college boys" who knew to notify Singha if legal papers were received. Singha said if he had been served, he would have sent the documents to Nemecek, who was representing him at the time in connection with all matters involving Bhatia.

Lazalde confirmed his service of the documents at 311 Marina Boulevard. He said he identified himself to the person who answered the door. When Lazalde asked whether that person was Naveen Singha, the person asked, "Well, what do you want?" When Lazalde said he had legal papers, the person took them, made a "smart aleck remark," and said, "I'll give them to my lawyer, anyway." Lazalde said Singha "looks familiar," but he could not state with certainty that Singha was the person he served. At the time, however, Lazalde had no doubt that he had effected service on Singha.

In denying the motion to vacate, the trial court held that Singha had not rebutted the presumption created by the use of a registered process server. Further, the court was persuaded by Lazalde's testimony that Singha "did receive the papers," noting that Singha had acknowledged being in the neighborhood, if not necessarily at home, that evening. As to the inclusion of the word "[Proposed]" on the proof of service, the court found it neither legally disqualifying nor prejudicial to Singha. The court also found no extrinsic mistake, noting that any error by Nemecek was not "the kind of extrinsic

4

mistake that should grant the relief you're seeking today" and Singha had an alternative remedy if Nemecek had failed in his duties.

## II. DISCUSSION

Singha contends the denial of his motion to vacate was an error because (1) the clerk improperly entered his default on the basis of a proof of service showing service of a "proposed" cross-complaint, (2) he was never served with the cross-complaint, and (3) he made out a case of "extrinsic mistake" in failing to respond to the cross-complaint.

### A. *Entry of Default*

The clerk's entry of default on a cross-complaint is governed by Code of Civil Procedure section 585, subdivision (e), which states: "If a defendant files a cross-complaint against another defendant or the plaintiff, a default may be entered against that party on that cross-complaint if the plaintiff or that cross-defendant has been served with that cross-complaint and has failed to file an answer [or other responsive pleading] within the time specified in the summons . . . ." As noted in *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, the entry of default "reflects the clerk's performance of a series of quintessentially clerical tasks: ascertaining that the request for default appears in order, confirming that the defendant's time to plead has elapsed, noting the absence of a responsive pleading by him, and signifying these facts by entering the default." (*Id.* at p. 534.) The rules governing the default procedure "are precise and should be followed to the letter." (*Jones v. Interstate Recovery Service* (1984) 160 Cal.App.3d 925, 928.) When a default has been entered in violation of applicable rules, it must be set aside. (*Harris v. Minnesota Investment Co.* (1928) 89 Cal.App. 396, 400.)

Singha argues that the clerk lacked the authority to enter his default because the title of the document served was different from the title of the document on file. Singha, however, cites no rule of law requiring the title of a document listed in a proof of service to match exactly the title of the document on file before a default can be entered. Under Code of Civil Procedure section 585, the clerk's ministerial duty is to ensure, on the basis of the proof of service, that proper and timely service was made of the pleading on which the default was to be entered. As relevant to the issue here, it was the clerk's duty to

ascertain from the proof of service that the document served was the same document on which the default was sought.

As noted above, the full title of the document listed on the proof of service is quite long, referring both to the cross-complainant and both cross-defendants, as well as to Roe defendants. This title, however, was not recorded in the court's docket. Rather, the filed document was referred to as "1ST AMENDED CROSS COMPLAINT . . . FILED PER ORDER BY CROSS COMPLAINANT EAST WEST BANK, A CALIFORNIA CORPORATION, A CORPORATION AS TO CROSS DEFENDANT BHATIA, SABEER ,AN INDIVIDUAL ROES 1 THROUGH 30, INCLUSIVE SINGHA, NAVEEN , AN INDIVIDUAL."[2] Notwithstanding the designation "proposed," the reference in both the docket sheet and the title of the served document to a first amended complaint by the bank against Bhatia, Singha, and Roe defendants provided the clerk assurance that the filed and served documents were the same.

Inclusion of the word "proposed" was readily explained by the reference in the docket sheet to a cross-complaint filed "per order." When litigants seek leave to file an amended pleading, they ordinarily submit with their motion papers a copy of the document intended to be filed with the word "[Proposed]" preceding the title. An experienced clerk would have been aware of the practice and would have concluded that the served document reflected it. That, however, provided no reason to believe the served document differed in any material way from the filed document. Having no reason to believe the served document was not the same as the filed document, the clerk's entry of the default was appropriate.[3]

---

[2] We have replicated the text and punctuation in the docket entry.

[3] Singha makes no claim that the document served actually differed from the filed document in any way other than the failure to cross out the word "[Proposed]." As the trial court held, that difference is trivial and would not in any way have frustrated the purpose of service, to give Singha notice of the claims asserted against him. (See *Jones v. Interstate Recovery Service*, *supra*, 160 Cal.App.3d at p. 928 [purpose of default procedure is to "ensure that a defendant has sufficient knowledge of the pending action"].) Singha argues that "[t]he filed document may contain further revisions or

6

Singha's insistence that "[t]he clerk is limited to making sure that every detail is exactly correct" is unsupported by any decisional or statutory law and reflects a misconception of the clerk's task. The characterization of the clerk's duty as "ministerial" means "he has no authority other than that conferred by the *statutes*" (*Burtnett v. King* (1949) 33 Cal.2d 805, 808) and must base his or her decision on the face of the record. " 'The clerk may not take outside evidence, or make a judicial determination of disputed matters not apparent on the face of the record.' " (*Standard Microsystems Corp. v. Winbond Electronics Corp.* (2009) 179 Cal.App.4th 868, 899, disapproved on other grounds in *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 844.) While the clerk's duties are circumscribed by statute and the record, ministerial is not the same as mechanical. " 'The familiar declaration that the clerk has purely ministerial functions does not mean that his duties are confined to such clerical tasks as accepting papers for filing and keeping records. Many of his acts are judicial in the sense that they determine the rights of parties to the litigation; e.g., the entry of a judgment or order, default or dismissal. The significance of the "ministerial" label is that the clerk has no power to decide questions of law nor any discretion in performing those judicial duties; he must act in strict conformity with statutes, rules, or orders of the court.' " (*People v. Funches* (1998) 67 Cal.App.4th 240, 243–244.) While the statutory requirements for service of process must be strictly satisfied, determining whether such strict compliance has occurred often requires an exercise of judgment, informed by experience. In this case, for example, the docket sheet does not reflect the exact title of the filed document; rather, as stated above, the docket refers to the document generically by its pleading type and parties. In comparing the two, the clerk was required to determine that the document referred to by its exact title in the proof of service was the same as the document described generically in the docket sheet.

---

interlineations," but we need not speculate. The record contains a copy of both the served and filed documents. Lazalde testified that they were identical, and Singha has pointed to no differences.

Making that comparison required an exercise of experience and judgment, which the clerk properly carried out.

Singha argues "[t]he clerk was not permitted to . . . assume that the document described in the Proof of Service as '[Proposed] First Amended Cross-Complaint' was the same as the 'First Amended Cross-Complaint,' " but he cites no authority to support the assertion, and we are unaware of any such authority. On the contrary, for the various reasons described above—the identity of the pleading and the parties, as well as litigant's common use of "proposed" in seeking leave to file an amended pleading—the clerk's conclusion that the documents were the same was well-supported. Further, Singha's argument in this regard is based on a false premise. He proceeds from the assumption that the correct title of the document on file was "First Amended Cross-complaint . . ." and claims error in the entry of default on the basis of a title including the word, "proposed." In fact, the correct title of the document on file was "[Proposed] First Amended Cross-complaint . . . ," with the word "[Proposed]" lined out. The title of the document listed in the proof of service therefore was arguably a closer match for the document on file than the title, "First Amended Cross-complaint . . . ." Such quibbles over a trivial difference simply emphasize the propriety of the clerk's exercise of judgment.[4]

---

[4] Further, under the circumstances presented here, applying Singha's purported rules would have made entry of default virtually impossible. Singha claims "the document named in the proof of service must be an exact match to the document on which the default is to be taken" and in deciding whether to honor a request to enter default the clerk is "not permitted to examine . . . the documents on file." Because the title of the filed pleading was not recorded in the court's docket, this would have made it impossible to enter a default on the basis of any proof of service containing the title of the document. Rather, no entry of default would have been permissible unless the process server was sufficiently prescient to list an exact match for the mistake-filled generic description of the document entered by the clerk in the docket. For the reasons described in the text, that is not the law.

8

**B.** *Personal Service on Singha*

Singha first contends Bhatia failed to meet his burden of proof demonstrating actual service. While it is true that the plaintiff has the burden of proof in demonstrating service, Bhatia's submission of an affidavit of service by a registered process server created a presumption of proper service, satisfying this burden. (*American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 387, 390.) Singha contends the declaration of service cannot create a presumption because the title of the served document contains the word "proposed," but Lazalde's declaration demonstrates that the served and filed documents were identical, except for the failure to cross out the word "[Proposed]." As discussed above, this trivial difference does not affect the validity of service. Accordingly, Singha had the burden of proving that proper service was not made. In reviewing the trial court's conclusion that Singha failed to carry his burden, we affirm if the court's finding of personal service on Singha was supported by substantial evidence. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230.)

There was plainly substantial evidence to support the finding here. Singha fit the process server's description of the person served. Although it is possible to quibble about the meaning of "somewhat heavy-set," the trial judge, who had the opportunity to view Singha, found the description apt. Further, the only other residents of the house at the time were described by Singha as "college boys," not middle-aged men like himself. In addition, the person served, when asked if he was Naveen Singha, did not deny his identity. On the contrary, he accepted the papers presented for service and said he would give them to his lawyer. Implicitly, at least, this constitutes an acknowledgment of his identity, which is what Lazalde took it to be. Finally, Singha presented no evidence casting doubt on the credibility of Lazalde's account. He acknowledged he was living at the address at which service was made and could have been at home that evening. There was little reason to doubt he was the person served.

**C.** *Extrinsic Mistake*

As explained in *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488 (*Cruz*) at pages 502–503: " 'Extrinsic mistake' refers to circumstances outside of the litigation that

9

have prevented a party from obtaining a hearing on the merits. '[A] trial court may . . . vacate a default on equitable grounds even if statutory relief is unavailable. [Citation.]' [Citation.] [¶] A challenge to a trial court's order on a motion to vacate a default on equitable grounds is reviewed for an abuse of discretion. [Citation.] . . . . [¶] Extrinsic mistake exists when the ground for relief is not so much the fraud or other misconduct of one of the parties as it is the excusable neglect of the defaulting party to appear and present his claim or defense. [Citation.] If such neglect results in an unjust judgment— one entered without a fair adversary hearing—the defendant may have a basis for equitable relief. [Citation.] [¶] Relief on the ground of extrinsic fraud or mistake is not available to a party if that party has been given notice of an action yet fails to appear, without having been prevented from participating in the action. [Citation.] ' "To set aside a judgment based upon extrinsic mistake one must satisfy three elements. First, the defaulted party must demonstrate that it has a meritorious case. Second[], the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the original action. Last[], the moving party must demonstrate diligence in seeking to set aside the default once . . . discovered." ' "

We find no abuse of discretion in the trial court's refusal to vacate the default on a theory of extrinsic mistake. First, the court held that Singha was actually served. Accordingly, he had notice of the action, failed to appear, and was not prevented from participating. Under *Cruz*, the equitable doctrine was unavailable to him. Second, Singha failed to demonstrate diligence. He claimed to have left everything in Nemecek's hands, having instructed him either to negotiate with the bank's attorney or file an answer and defend the case. There is no evidence Singha ever followed up with Nemecek to ensure that some progress was made—or, for that matter, provided Nemecek with a copy of the papers served on him. Further, after Nemecek withdrew from representing Singha, there is no evidence Singha attempted to undertake the handling of the cross-complaint himself or instructed any new attorney to do so. There is simply no factual basis for a finding of extrinsic mistake.

10

## III.  DISPOSITION

The judgment of the trial court is affirmed.

_____
Margulies, J.

We concur:


_____
Humes, P.J.


_____
Banke, J.

A143193