Filed 1/8/16  Monterey County Dept. of Child Support Services CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MONTEREY COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ADEGBENIGA K. ADESOKAN, <br><br> Defendant and Appellant. | H041829 <br> (Monterey County <br> Super. Ct. No. CSS51978) |

In 2007, respondent Monterey County Department of Child Support Services (DCSS) obtained a default judgment against appellant Adegbeniga K. Adesokan in this Family Code section 17400 action to establish paternity and child support.[1]  The judgment contained a finding that Adesokan was the father of the child named in the DCSS complaint and ordered Adesokan to pay $1,370 per month in child support.

DCSS filed the underlying complaint in November 2006.  Adesokan was served by substitute service in January 2007.  Before the complaint was served, however, Adesokan and the child's mother—who were not married—started living together with the child.  After Adesokan was served with the complaint and related court documents, the mother asked DCSS to close its file.  After DCSS obtained a default judgment, it closed its file and did not enforce the judgment.

---

[1] All further undesignated statutory references are to the Family Code.

After the parents separated in 2013, the mother applied for public assistance. This prompted DCSS to reopen its file to enforce the judgment. Months later, Adesokan filed motions to set aside the default judgment and to modify support. The trial court granted the motion to modify support and reduced the amount of the support payments, but it denied Adesokan's request for relief from default.

On appeal, Adesokan argues: (1) DCSS breached its fiduciary duty to him by pursuing unnecessary litigation after the mother asked DCSS to close the case; (2) the summons and complaint were not properly served and the court therefore never acquired jurisdiction over him; (3) DCSS did not properly establish he was the child's father; (4) DCSS misrepresented his income to the court; and (5) DCSS misrepresented to him (Adesokan) that the case was closed and then pursued his default without providing notice of the default hearing.

We find no error and will affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Adegbeniga Adesokan (Father) and S.J. (Mother) have one child (Child), who was born in June 2006. Father and Mother never married. In the fall of 2006, Mother was living in Monterey County and filed an application with DCSS for assistance in obtaining child support from Father.

### DCSS Filed and Served its Summons and Complaint

On November 16, 2006, DCSS filed a complaint to establish parentage and support. The complaint asked the court to determine that Father and Mother were Child's parents and to order Father to pay $1,370 per month in child support. The complaint alleged Father had a known income of $10,000 per month and Mother earned $3,148 per month. DCSS also asked the court to order Father to (1) provide health insurance for Child; (2) pay one half of Child's uncovered health care costs; and (3) pay one half of

any daycare expenses. DCSS filed a proposed judgment, with a guideline calculation supporting the amount of child support demanded.

In December 2006, Father and Mother started living together in Madera, California. According to Father, they "reunited . . . as domestic partners" to "provide a stable family environment" for Child.

In January 2007, DCSS attempted to serve the summons, complaint, proposed judgment, and other papers on Father three separate times at his place of business. Each time, an employee of the business told the process server Father was not there. On January 25, 2007, after the third attempt, the process server left the papers with James Kaye, the person in charge of the business. On January 30, 2007, the process server mailed copies of the papers to Father's business address.

### DCSS Obtained a Default Judgment

On February 20, 2007, Mother called DCSS and asked that the case be closed. She told DCSS she had reunited with Father and they were both caring for Child. According to DCSS, child support officer Roy Rosa told Mother the summons and complaint had been served on Father, and Father "had 30 days to reply." Rosa told Mother (1) if Father did not answer the complaint, DCSS would take his default based on the proposed judgment; (2) it was DCSS's policy not to close a case when an action is pending; and (3) Mother could close her case after DCSS obtained a default order.

In early March 2007, Mother called DCSS to confirm that the case had been closed. She was told the case was not closed and she had to file a request in writing. On March 27, 2007, Mother went to the DCSS office and filled out a form in which she stated: "I wish to terminate my petition for child support from non-custodial parent. I would like to close the case." Mother "was told again that [DCSS] would close the case upon receipt of the [default] order."

3

Father never answered the complaint. On April 6, 2007, DCSS filed a proof of service and a declaration for default judgment seeking the relief requested in the complaint. The declaration advised the court that Child was "neither receiving nor applying for public assistance."

On April 17, 2007, DCSS filed a request to enter Father's default and to enter a default judgment pursuant to section 17430. The court entered default as requested and entered its default judgment that same day. The judgment ordered Father, among other things, to pay child support of $1,370 per month beginning December 1, 2006.

On April 26, 2007, DCSS closed Mother's case without enforcing the judgment. Mother was informed in late April 2007 that DCSS had obtained a default judgment against Father. On April 27, 2007, Mother called DCSS to confirm that the case had been closed.

According to DCSS, Father called DCSS later that day and "spoke to Child Support Officer, Chrissy Annotti. Father indicated that he had a problem with DCSS taking his default and that since Mother wanted the case closed, [DCSS] should have let him know that [it] would see the case through default and then close." Father claims he and Mother called DCSS that day "to express their dissatisfaction" and ask what right DCSS had "to keep persisting in destroying the family when neither party requested [DCSS's] help." According to Father, DCSS apologized, told them the case was closed, and said they did not need to do anything further and would "not be bothered hence."

Father and Mother lived together with Child in Madera for another six years until they separated in April 2013. During that time, Father did not take any action to set aside the default judgment. Father contends he relied on DCSS's representations that the case was closed and he need not do anything further.

After Mother and Father separated, Mother returned to Monterey County and sought DCSS services. In late 2013, Father attempted to renew his passport to take a job overseas. In October 2013, the State Department denied his passport application because

4

he was in arrears on his child support obligation. Father claims this is when he first learned that DCSS had obtained a default judgment against him and was enforcing the judgment.

### Father's 2014 Request to Modify Child Support and Set Aside the Default Judgment

In April 2014, Father filed a request for an order modifying child support and to set aside the default judgment. He later asked the court to order joint custody of Child. In a declaration, Father stated that he lived with Mother and "our daughter from 2007 all the way up to April of 2013." He asked the court to set aside the judgment because he believed Mother had closed the case, based on Mother's March 2007 written request to DCSS. Father declared that he was not aware the child support judgment existed until he appeared in a child support matter involving a different child in Madera County and "they started talking about a child support order in Monterey." Alternatively, Father requested he be granted equitable relief from any arrearages owed from 2007 until April 2013, since Mother and Child lived with him during that time. He also argued the child support order was based on "mistaken inflated income" data, told the court he was not working, and asked the court to modify the order based on Mother's and Father's present income.

In its responsive declaration, DCSS stated it was not seeking arrearages for January 2007 through April 2013 since it did not enforce the judgment during that period. DCSS stated it began "charging current support" in August 2013, when Mother began receiving CalWORKs benefits.

In July 2014, Father filed a motion to set aside the judgment of paternity. Father argued the issue of paternity was never determined. He asserted he relied on representations by Mother and DCSS regarding paternity and was "unsure" whether he was Child's biological father. Father argued he was never properly served with the complaint and related court documents. He declared the complaint and other papers were served on his 75-year-old mother who "barely spoke" English. He asserted that when he

5

and Mother became aware of the complaint, they immediately asked DCSS to close the case and relied on DCSS's misleading representations that the case was closed.

DCSS responded that Father's motion to set aside the paternity judgment was time-barred because it was not filed within two years of the date he knew or should have known of the judgment. DCSS argued that "Father's admission that he was aware of the case in early 2007 would bar any relief after early 2009."

In August 2014, the court ordered Father to comply with an order of examination, to seek work, and to report his job search efforts to DCSS every two weeks. Later, the court scheduled the case for an evidentiary hearing regarding service of the complaint and Father's request to set aside the judgment of paternity. The court ordered Father to file a declaration setting forth his position 10 days before the hearing.

Father filed a brief (not a declaration) in which he asserted: (1) DCSS breached its fiduciary duty to him by pursuing unnecessary litigation after Mother asked it to close the case; (2) the complaint was not properly served and the court therefore never acquired jurisdiction over him; (3) paternity was never properly established; (4) DCSS misrepresented his income in the complaint, and since his income was unknown, the court should have used the statutory presumption that he earned minimum wage; and (5) DCSS misrepresented to him that the case was closed, and it pursued his default without providing him notice of the default hearing.

Father and DCSS appeared for the evidentiary hearing. Since no court reporter was present, we do not have a transcript of the hearing. The court granted Father's request to modify child support. The court determined that guideline support was $177 per month based on Father's income of $1,248 per month, but ordered Father to pay "non-guideline" support of $174 per month due to his low income. The court denied Father's request to set aside the judgment of paternity. Neither party requested a statement of decision.

DISCUSSION

*Statutory Scheme; Standard of Review*

"In 1974, Congress enacted title IV-D of the Social Security Act '[f]or the purpose of enforcing the support obligations owed by absent parents to their children . . . .' [Citations.] This 'IV-D' program was intended 'to recoup welfare costs from the absent parents of children being given public assistance.' [Citations.] [¶] In return for receiving federal funding for public assistance, title IV-D requires the states to provide services related to the establishment, modification, and enforcement of child support obligations. [Citation.] The California Legislature has enacted statutes designed to ensure that our state complies with its title IV-D obligations. [Citations.]" (*County of Lake v. Palla* (2001) 94 Cal.App.4th 418, 421-422 (*Palla*).)

The Legislature also created a State Department of Child Support Services, which is charged with administering all services and performing all functions "necessary to establish, collect, and distribute child support." (§ 17200; Stats. 1999, ch, 478; see also §§ 17303 [legislative findings].) Although the State agency is "designated the single organizational unit whose duty it shall be to administer the Title IV-D state plan for securing child and spousal support, medical support, and determining paternity" (§ 17202), actual services occur at the county level under the authority of local child support agencies like DCSS. (§§ 17304, 17500, subd. (a), (b).)

The issues that may be litigated in a DCSS action to establish paternity or child support are limited to parentage and child support (including medical support) until a support order is entered. (§ 17404, subd. (a); see *County of Los Angeles v. Sheldon P*. (2002) 102 Cal.App.4th 1337, 1343.) Although Child was not receiving public assistance when DCSS filed its complaint, DCSS had standing to bring a proceeding to establish parentage and support, as well as to enforce a child support order if requested to do so by a parent of Child. (*Plumas County Dept. of Child Support Services v. Rodriquez* (2008)

7

161 Cal.App.4th 1021, 1027-1028; see also § 17400, subd. (h)(3).) It is undisputed that Mother asked DCSS to help her establish parentage and support and that DCSS opened a file under case No. 40837 for that reason. Once the case was opened, DCSS had the authority to "direct, control, and prosecute civil actions and proceedings . . . in support of [its] child support activities." (§ 17400, subd. (b)(1).)

We review an order denying a motion to set aside a default judgment in an action to establish paternity and support for an abuse of discretion. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230 (*Gorham*).)

***The Summons and Complaint Were Properly Served***

Father challenges service of the summons, complaint, proposed judgment, and other papers. He argues he was not validly served because service was made on his business partner, James Kaye, and not on him personally.

The Family Code provides summary procedures for initiating a DCSS action to establish paternity or child support, including the service of a combined summons and complaint and a proposed judgment. (§§ 17400, subd. (d), 17430, subds. (a), (b).) In any action to enforce a duty of support, personal jurisdiction over the defendant is essential. "[E]ven though a statutory scheme may empower the trial court to determine paternity and child support . . . , such power only extends 'to parties over whom it has personal jurisdiction.' [Citation.]" (*Gorham*, *supra*, 186 Cal.App.4th at p. 1227.)

The Code of Civil Procedure authorizes various methods of service, including personal delivery to the defendant and delivery to someone else at the defendant's usual residence or place of business (commonly known as substitute service). (Code Civ. Proc., §§ 415.10-415.30, 415.50.) After three attempts at personal service, DCSS relied on substitute service at Father's place of business.

Code of Civil Procedure section 415.20 governs substitute service. It provides in pertinent part: "(b) If a copy of the summons and complaint cannot with reasonable

diligence be personally delivered to the person to be served, . . . , a summons may be served by leaving a copy of the summons and complaint at the person's . . . , usual place of business, . . . , in the presence of . . . a person apparently in charge of his or her office, place of business, . . . , at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing."

DCSS filed a proof of service from a registered process server, who stated under penalty of perjury that Father was served via substitute service on 50-year-old James Kaye, the "person apparently in charge" at Father's usual place of business, after the process server had made three attempts to serve Father at that location but was told Father was not there. Substitute service on Kaye was accompanied by mail service to Father at his business address.

"[A]n individual may be served by substitute service only after a good faith effort at personal service has first been made: the burden is on the plaintiff to show that the summons and complaint 'cannot with reasonable diligence be personally delivered' to the individual defendant. (§ 415.20, subd. (b); *Evartt v. Superior Court* (1979) 89 Cal.App.3d 795, 801 . . . .) Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as ' "reasonable diligence." ' [Citation.]" (*American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 389.) Since the process server made three attempts to personally serve Father at his place of business before serving Kaye, the reasonable diligence requirement of Code of Civil Procedure section 415.20 was satisfied in this case.

A registered process server's declaration of service establishes a presumption affecting the burden of producing evidence of the facts stated in the declaration. (Evid. Code, §647; see also *Floveyor Internat., Ltd. v. Superior Court* (1997) 59 Cal.App.4th

9

789, 795 [filing of proof of service that complies with the applicable statutory requirements creates a rebuttable presumption of proper service].)  Since the process server's declaration demonstrated that she complied with all of the statutory requirements for substitute service, DCSS was entitled to rely on a rebuttable presumption of proper service.  We do not have a transcript of the evidentiary hearing and therefore do not know if Father presented any evidence that rebutted that presumption.  Father's brief on appeal does not refer to any such evidence.

Father's reliance on *Gorham* is misplaced.  In *Gorham*, the parent who was ordered to pay support proved that he was not at the location where he was allegedly served at the time of the purported service, that the proof of service was false, and that the process server had fraudulently signed the proof of service.  (*Gorham*, *supra*, 186 Cal.App.4th at pp. 1221-1224, 1230.)  Unlike the father in *Gorham*, Father does not challenge the veracity of the proof of service or dispute the facts stated therein.  Instead, he argues service was ineffective because he was not personally served.

Father challenges the process server's declaration of diligence, arguing that DCSS should have asked Mother where Father could be found, since Mother and Father were living together at the time.  But there is no requirement that Father be served at his residence.  Personal service would have been proper anywhere, and Code of Civil Procedure section 415.20 allows for substitute service at the defendant's place of business.  Father does not dispute that service occurred at his place of business.  To the contrary, he states that his business partner was served.

For these reasons, we reject Father's contention that he was not properly served, and we conclude the court had personal jurisdiction over him.

### *Alleged Breach of Fiduciary Duty*

Father argues DCSS "breached its fiduciary duty as an agency chartered with looking out for the best interest of the family . . . by unnecessarily continuing to litigate

10

the matter" after he and Mother reunited and asked DCSS to close the case. He argues DCSS did not act in good faith to protect the interests of Child, but instead was "vested in [its] own process."

The Legislature has declared "a compelling state interest in establishing paternity for all children." (§ 7570.) Section 17406, subdivision (a) provides that in "all actions involving paternity or support, . . . , the local child support agency and the Attorney General *represent the public interest* in establishing, modifying, and enforcing support obligations. No attorney-client relationship shall be deemed to have been created between the local child support agency or Attorney General and any person by virtue of the action of the local child support agency or the Attorney General in carrying out these statutory duties." (§ 17406, subd (a); italics added.) Indeed, in this statutory proceeding to establish paternity and support, DCSS was Father's adversary.

DCSS is "responsible for promptly and effectively establishing, modifying, and enforcing child support obligations, including medical support, . . . , and determining paternity in the case of a child born out of wedlock." (§ 17304; see also § 17415, subd. (b) ["the local child support agency shall investigate the question of nonsupport or paternity and shall take all steps necessary to obtain child support for the needy child, . . . , and determine paternity in the case of a child born out of wedlock"].) Section 17404 provides that DCSS "shall control" the litigation brought pursuant to that section and "the manner, method, and procedures used in establishing parentage and in establishing and enforcing support obligations unless and until the parent who requested or is receiving support enforcement services has requested in writing that the [DCSS] close [the] case and the case has been closed in accordance with state and federal regulation or policy." (§ 17404, subd. (e)(4).)

According to DCSS's responsive declaration, when Mother called DCSS on February 20, 2007, and asked that the case be closed, child support officer Roy Rosa told her the summons and complaint had been served on Father, and Father "had 30 days to

11

reply." Rosa told Mother that if Father did not answer, DCSS would take his default, and it was DCSS's policy not to close a case when an action is pending. On March 27, 2007, Mother filled out a form and asked DCSS to close the case. Mother "was told again" that DCSS would close the case after it received the support order. After it received the default judgment, DCSS closed the file and did not take any action to enforce the judgment. Father does not challenge this evidence on appeal.

Under the statutory scheme, DCSS had a duty to "promptly" determine paternity since Child was "born out of wedlock," and to establish Father's support obligation. (§ 17304.) In addition, DCSS had the right to determine Father's support obligation and to control "the manner, method, and procedures used in establishing parentage" until Mother asked to close her case in writing on March 27, 2007. (§ 17404, subd. (e)(4).) The statute also requires that cases be closed "in accordance with state and federal regulation or policy." (§ 17404, subd. (e)(4).) DCSS presented evidence that under its policy, it will not close a case that has litigation pending until it obtains a judgment of parentage and support. Thus, DCSS acted within the authority conferred by section 17404, subdivision (e)(4) when it pursued the litigation to the point of obtaining the default judgment. For these reasons, we reject Father's contention that DCSS breached its fiduciary duty to him when it obtained the default judgment.

Father also argues that DCSS "failed to inform the court that [Mother and Father] were living together and had requested that their [*sic*] petition for support be terminated." But Father cites no authority that required DCSS to advise the court that Mother and Father were living together.

Father also complains that DCSS obtained "an **unnoticed** default judgment against" him. (Original bold.) Section 17430 provides in part: "(a) Notwithstanding any other provision of law, in any action filed by the local child support agency pursuant to Section 17400, 17402, or 17404, a judgment shall be entered *without hearing, without the presentation of any other evidence or further notice to the defendant,* upon the filing of

12

proof of service by the local child support agency evidencing that more than 30 days have passed since the simplified summons and complaint, proposed judgment, blank answer, blank income and expense declaration, and all notices required by this division were served on the defendant.  [¶]  (b) If the defendant fails to file an answer with the court within 30 days of having been served . . . , or at any time before the default judgment is entered, the proposed judgment filed with the original summons and complaint shall be conformed by the court as the final judgment."  (Italics added.)

The form pleadings prescribed by the Judicial Council are the only pleadings permitted in a section 17404 action to determine parentage and support.  (*Palla*, *supra*, 94 Cal.App.4th at pp. 424-426; Cal. Rules of Court, rule 5.74(b).)  In accordance with section 17430, the combined summons and complaint (Judicial Council form FL-600) and the proposed judgment (Judicial Council form FL-630) used in this case advised Father that unless he filed an answer within 30 days, the proposed judgment would become legally binding without the presentation of additional evidence, a "prove-up hearing," or further notice to Father.  A formal prove-up hearing was not required (*County of Yuba v. Savedra* (2000) 78 Cal.App.4th 1311, 1322-1324 (*Savedra*)) and Father was not entitled to further notice that DCSS would take his default.

### *Father's Challenge to Paternity Order*

Citing section 7570, which provides that "[e]stablishing paternity is the first step toward a child support award," Father argues that DCSS "failed to properly inquire into the underlying fact" of his paternity or to inform the court "that paternity was conclusively established."  Father argues he had the right to genetic testing to establish that he was Child's father and that the testing should have been done before DCSS took his default.  He argues, alternatively, that DCCS did not present any testimony or a declaration from either Father or Mother that supported a finding of paternity.

13

DCSS filed a Judicial Council form FL-600 complaint, which has been adopted for mandatory use in section 17400 actions to establish paternity and support. (*Palla*, *supra*, 94 Cal.App.4th at pp. 424-425 & fn. 6.) Paragraph 2a of the complaint alleged that Father and Mother were Child's parents. Paragraph 2b of the complaint alleged that Father was "named as the father of [Child] in [a] declaration of paternity on file with [DCSS]." The proposed judgment included a finding in paragraph 6a that the "mother and father listed in the complaint are the parents of [Child]." As we have explained, after Father defaulted, the proposed judgment became the final judgment of the court. (§ 17430, subd. (b).) DCSS was not required to provide any further evidence of parentage under the summary procedures authorized by statute. (§ 17430, subd. (a).) If Father wished to contest paternity, he needed to file an answer and appear in the action.

Father moved to set aside the judgment of paternity under sections 7646 and 7575. Section 7646, subdivision (a) authorizes a motion to set aside a judgment of paternity "if genetic testing indicates that the previously established father of a child is not the biological father of the child." Section 7646 sets forth various limitations periods for a motion to set aside a judgment of paternity. The applicable limitations period is in subdivision (a)(1) of the statute, which provides that the motion shall be brought: "*Within a two-year period* commencing with the date on which the previously established father knew or should have known of a judgment that established him as the father of the child or *commencing with the date the previously established father knew or should have known of the existence of an action to adjudicate the issue of paternity*, whichever is first, . . . ." (Italics added.) Father should have known of the existence of the action to adjudicate paternity on the day he was served with the complaint. Father was served by substitute service, which was complete on February 9, 2007 (10 days after the process server mailed the papers to Father's business address). Father filed his motion to set aside the judgment of paternity in July 2014, more than seven years after service of the complaint. The motion was therefore untimely under section 7646.

14

Section 7575 authorizes a motion to set aside a voluntary declaration of paternity. It is not clear whether Father ever signed such a declaration. Even if he had, a motion to set aside a voluntary declaration of paternity must be filed within two years of the child's birth. (§ 7575, subd (b)(3)(A).) Child was born in June 2006. Thus, Father's motion filed in July 2014 was also time-barred under section 7575.

Although Father argues there is no evidence he is Child's father, in his declaration in support of his request for an order modifying support, Father stated, "I was living with [Mother] and *our daughter* from 2007 all the way up to April of 2013." (Italics added.) Arguably, Father admitted paternity in that declaration. "A person is presumed to be the natural parent of a child" if the person "receives the child into his or her home and openly holds out the child as his or her natural child." (§ 7611, subd. (d).) Moreover, Father's challenge to the paternity judgment is inconsistent with his request that the court order joint custody of Child. For these reasons, we conclude the court did not err when it denied Father's request to set aside the judgment of paternity.

### *Alleged Misrepresentation of Income*

Father argues the income information presented to the court as the basis for the default judgment was "fabricated," "perjured—arbitrary and not factual." Citing section 17400, subdivision (d)(2), Father argues that since DCSS did not have information about his income or income history when it filed the complaint, his income should have been presumed to be the minimum wage at 40 hours per week. The minimum wage presumption in section 17400 applies when the obligor parent's "income or income history is unknown to the local child support agency." (§ 17400, subd. (d)(2).) DCSS alleged in the complaint that Father had "known income" of $10,000 per month, and DCSS included a guideline calculation based on that amount in the proposed judgment. Since the default judgment was based on "known income," not presumed income, the section 17400 presumption did not apply.

15

A child support order entered as part of a default judgment may be set aside under section 17432 if a defendant's income was "substantially different" from presumed income "for the period of time during which [the] judgment was effective." (§ 17432, subd. (c).) However, this set aside provision applies only to orders based on presumed income (§ 17432, subd. (b)). The order in this case was based on Father's known income. Thus, Father was not entitled to relief under section 17432.

Father argues that he "brought the issue of the misrepresented income" to the trial court's attention and "the lower court judge ignored the evidence and the facts." He asserts his actual income was seven times lower than what DCSS represented to the court when it obtained the default judgment. In support of this contention, he asks us to compare the amount ordered in the default judgment ($1,370 per month) with the amount ordered when the court granted his request to modify support ($174 per month).

We do not find this argument persuasive. The default judgment was based on the parents' income in October 2006, while the modification order was based on their income in February 2015. Father's change in income eight years later does not justify setting aside the original support order. In addition, Father has failed to provide this court with an adequate record to permit review of this claim. On appeal, the trial court's judgment is presumed to be correct and the appellant (Father) has the burden of overcoming this presumption of correctness. (*Cahill v. San Diego Gas & Electric Co*. (2011) 194 Cal.App.4th 939, 956; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1285 (*Maria P*.); *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362 (*Oliveira*).) That burden includes presenting an adequate record that demonstrates the alleged error. (*Maria P*., at p. 1285; *Oliveira*, at p. 1362.) Failure to provide an adequate record on an issue requires the issue be resolved against the appellant. (*Maria P*., at p. 1285; *Oliveira*, at p. 1362 [judgment must be affirmed where appellant fails to present adequate record for review]; *Foust v. San Jose Construction Co. Inc*. (2011) 198 Cal.App.4th 181, 187 [argument forfeited

16

where record on appeal contained only excerpts from clerk's transcript and no reporter's transcript or exhibits].)

The record on appeal here does not include a reporter's transcript of or any exhibits presented at the evidentiary hearing. We do not know what evidence, if any, the parties presented to the court relating to Father's income in 2006. We thus conclude Father has failed to provide an adequate record to demonstrate the trial court erred when it denied his motion to set aside the default judgment on this ground.

Father argues that as a self-represented litigant, he is "held to a less stringent standard" than a party represented by a lawyer. But a self-represented party is held to the same procedural rules as a party who is represented by an attorney. As this court has explained, "[u]nder the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation.] Thus, as is the case with attorneys, [self-represented] litigants must follow correct rules of procedure. [Citations.]" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) Father is not excused from the requirement of providing this court with an adequate record because he represents himself.

For these reasons, we conclude the trial court did not err when it rejected Father's contentions related to the amount of support awarded in the default judgment.

### *Alleged Misrepresentations Regarding Case Closure*

Father argues DCSS misrepresented to him and Mother that the case was closed, that he need not do anything further, and DCSS then "went on to unnecessarily litigate the matter" and obtain a default judgment. The limited record before us demonstrates that DCSS disputed Father's claim that it misrepresented that the case was closed and told Father he need not do anything further. According to DCSS's responsive declaration, DCSS representatives told Mother that as a matter of policy it would not

17

close the file until after it obtained a judgment of paternity and support. Since there was a disputed factual issue regarding the alleged misrepresentation, the court may have believed DCSS's evidence and discredited Father's evidence. Since Father has not provided this court with a sufficient record to demonstrate error on this point, we must affirm the trial court's order. (*Oliveira, supra,* 206 Cal.App.4th at p. 1362.)

DCSS argues we must affirm the judgment because neither party requested a statement of decision after the evidentiary hearing. When modifying, terminating, or setting aside a support order, the trial court must provide a statement of decision explaining its ruling if requested by either party. (§ 3654; *In re Marriage of Sellers* (2003) 110 Cal.App.4th 1007, 1010 (*Sellers*)) A statement of decision must provide the factual and legal basis for the trial court's decision as to each of the principal controverted issues. (Code Civ. Proc., § 632; see *Sellers*, at p. 1010.) " 'Under the doctrine of "implied findings," when parties waive a statement of decision expressly or by not requesting one in a timely manner, appellate courts reviewing the appealed judgment must presume the trial court made all factual findings necessary to support the judgment for which there is substantial evidence.' [Citations.]" (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1248.)

Neither party requested a statement of decision after the evidentiary hearing. But the DCSS's declaration provides substantial evidence to support the trial court's implied finding that DCSS did not make any misrepresentations about closing the case, which supports the trial court's order denying Father's request to set aside the default judgment. We must therefore affirm the trial court's order.

## DISPOSITION

The trial court's February 11, 2015 order denying Father's motion to set aside the default judgment and modifying child support is affirmed.

18

_____
Márquez, J.

WE CONCUR:


_____
 Rushing, P. J.


_____
 Premo, J.