[No. A120494. First Dist., Div. Four. Nov. 25, 2008.]

SAN MATEO COUNTY DEPARTMENT OF CHILD SUPPORT
SERVICES, Plaintiff and Appellant, v.
DENNIS HENRY CLARK II, Defendant and Respondent.

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Paul Reynaga and Sharon Quinn, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

## OPINION

**REARDON, J.**—An order setting aside or vacating a paternity judgment pursuant to Family Code[1] section 7645 et seq. must rest on proof of exclusion of biological paternity as evidenced by genetic test results. The trial court granted the motion of respondent Dennis Henry Clark II (Clark) to set aside a 1998 default paternity judgment because the child's mother, who was never a party to the action, did not cooperate with court-ordered genetic testing. This order exceeded the court's authority to act under the governing statutory scheme. Accordingly, we reverse the judgment and remand for proper

---

[1] All statutory references are to the Family Code unless otherwise indicated.

discovery procedures and orders to ensure genetic testing and scientific resolution of Clark's efforts to resolve paternity.

## I. BACKGROUND

In December 1994, the San Mateo County Department of Child Support Services (Department)[2] brought an action against Clark to establish paternity and child support, alleging that Clark was the father of Dennis Holguin Clark III (Dennis), born in July 1989.

Clark, the only defendant to the action, was personally served but failed to answer the complaint. Seeking a default judgment, the Department submitted the declaration of Dennis's mother, Tina Holguin (Holguin), in which she declared under penalty of perjury that at the time she conceived Dennis, Clark was the only person with whom she had intercourse. The Department requested an order for arrearages of $10,500, to be paid at the rate of $150 per month. Public assistance benefits had been paid on behalf of Dennis from July 1, 1993, through July 31, 1997.

The trial court entered a default judgment establishing the parental relationship and the child support arrears, payable in monthly installments commencing February 1, 1998. Three years later the Department filed an order to show cause and affidavit for contempt, asserting that Clark had only paid $225 of the $5,400 ordered to date. We do not know the outcome of this proceeding. However, the Department launched a second effort in October 2006, alleging that Clark failed to make *any* payment from November 2003 through September 2006, with an additional $5,250 owing on the arrears for that timeframe.

This time Clark appeared in propria persona, was assigned a private defender and pleaded not guilty to 35 counts of contempt. Thereafter, Clark moved to set aside the judgment of paternity under section 7646. Clark served the Department, but did not serve Holguin. The Department mailed a copy of the noticed motion to Holguin.

---

[2] Until the year 2000, the duty to enforce child support orders at public expense resided in a special unit within the office of the district attorney of each county. (See Legis. Counsel's Dig., Assem. Bill No. 196 (1999–2000 Reg. Sess.) Stats. 1999, ch. 478. In 2000, this responsibility was lodged with a new county department of child support services. (§ 17304, subd. (a).) We use the term "Department" to refer to the current responsible entity as well as the former Family Support Division of the San Mateo County District Attorney's Office.

Clark appeared at the first continued hearing; Holguin did not. The court found that the motion was timely, ordered genetic testing and directed "both parties" to report to the Department. Holguin was further "ordered" to "bring" Dennis to submit samples, at the date and time specified by the Department by written notice.

After further continuances, Clark appeared at the September 2007 continued hearing to review the genetic test results; again Holguin did not appear. Clark's counsel advised the court that Clark had complied with the genetic testing order but Holguin "failed two different appointments."

Counsel suggested that the court had authority to set aside the default judgment. The Department countered that a body attachment or bench warrant would be more appropriate for Holguin, and noted that Dennis had turned 18. Further, although a motherless test could probably be performed, the Department indicated the results would be more accurate if Holguin submitted genetic samples as well. The court questioned the appropriateness of issuing a warrant for Holguin or Dennis. It preferred to set aside the judgment based on Holguin's failure, on two occasions, to comply with the testing order. The Department requested further time to pursue testing of Holguin and Dennis. Instead, the court granted Clark's motion, over the Department's objection. There was no discussion at this hearing of Dennis's interest in the paternity judgment and the parent-child relationship that had existed for nearly 10 years.

## II. DISCUSSION

The People urge that the trial court acted in excess of its authority in vacating the default judgment of paternity.[3] We agree.

### A. *Statutory Framework*

 Enacted in 2004, section 7645 et seq. established a procedure for setting aside or vacating a judgment of paternity where proof by genetic tests excludes the previously declared father of a child as the child's biological father, and certain other conditions are satisfied.[4] (Stats. 2004, ch. 849, § 4; §§ 7646, subd. (a), 7647, subd. (a).) Section 7647 empowers the trial court to grant a motion to set aside or vacate such a judgment *"only if all"* of the

---

[3] Clark did not file a respondent's brief.

[4] We note that the provisions of section 7645 et seq. *do not apply* in cases of adoption or to any paternity concerning a child conceived by artificial insemination or pursuant to a surrogacy agreement. (§§ 7648.8, 7648.9.)

conditions specified therein are met. (*Id.*, subd. (a), italics added.) In addition to conditions relating to venue and the contents of the motion, the statute requires a finding by the court "that the conclusions of the expert, as described in Section 7552,[5] and as supported by the evidence, are that the previously established father is not the biological father of the child." (§ 7647, subd. (a)(3).) And, where the movant is successful, the court must vacate any order for child support and arrearages based on the previous paternity judgment.[6] (§ 7648.4.) However, regardless of the test results, the court has discretion to deny the motion, after consideration of relevant factors, if it determines that so doing would be in the best interests of the child. (§ 7648.)

At the root of the procedures, conditions and considerations detailed in section 7645 et seq. are concerns of fairness to a person adjudged a father who in fact is not the biological father of the child in question. One who questions the certainty of his paternity as established by a prior judgment now has an avenue for resolving the matter with a scientific answer and attendant legal consequences: With the granting of a motion to set aside and vacate, the previously adjudged father is freed from parental responsibilities as well as support obligations.

## B. *Statutory Construction*

█ The Department is adamant that section 7647 does not authorize the action taken in this case. This argument frames an issue of statutory construction. In such matters, our job is to ascertain the lawmakers' intent to effect the statute's purpose. We first examine the statutory language, affording words their ordinary and usual meaning. If the terms are unambiguous, we conclude the lawmakers meant what they said and the plain meaning of the language prevails. (*Estate of Griswold* (2001) 25 Cal.4th 904, 910–911 [108 Cal.Rptr.2d 165, 24 P.3d 1191].)

█ Section 7647, subdivision (a) could not be clearer: The trial court has the authority to vacate a paternity judgment "only if *all*" of the conditions enumerated—including a court's finding that genetic testing excludes a previously established father as the child's father—are satisfied. (Italics

---

[5] This statute mandates that genetic tests be performed by an approved laboratory. As well, it allows a party or person at whose suggestion the tests are ordered to demand that independent tests be performed, with the results offered into evidence. (§ 7552.)

[6] As a result of the operation of section 7648.4, the Department's money judgment for arrearages was wiped out.

added.) Thus, under the logic of the statute, if genetic testing results *are not available* because of a mother's noncompliance with a testing order or for whatever reason, the prior paternity judgment *cannot be vacated.* The unavailability of genetic testing results is not a condition or alternative condition that would empower the court to vacate the prior paternity judgment.[7]

■ This conclusion is bolstered by the language of section 7646, which establishes the time period for bringing a motion to vacate a judgment of paternity. The introductory sentence provides that such a judgment may be set aside by enumerated persons "if genetic testing indicates that the previously established father of a child is not the biological father of the child." (§ 7646, subd. (a).) Section 7647 follows, reiterating the sole basis for vacating a judgment of paternity articulated in the previous section, namely that the court finds, on the basis of expert conclusions and the evidence, "that the previously established father is not the biological father." (§ 7647, subd. (a)(3).) We construe the language of a statute in the context of the overall statutory scheme, giving significance to every word, phrase, sentence and part in pursuit of the legislative purpose. (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].) Thus we read every statute with reference to the complete scheme of law to which it belongs, so that the whole is harmonized and retains effectiveness. (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 222 [17 Cal.Rptr.3d 842, 96 P.3d 141].) We will not read into section 7647 a condition or alternative condition that is inconsistent with the sole basis for setting aside a judgment of paternity expressed in section 7646, subdivision (a). Moreover, enabling a court to set aside or vacate a judgment of paternity without the verification of nonpaternity afforded by genetic testing undermines the very certainty the statute attempts to bring to family relations and obligations.

Clark, as the moving party, bore the burden of proving he was not the biological father by producing genetic tests from an approved laboratory that

---

[7] Interestingly, there is a procedure whereby a local support agency such as the Department may issue an administrative order requiring the mother, child and previously established father to submit to genetic testing, where the venue and motion content conditions articulated in section 7647, subdivision (a) are satisfied. (§ 7648.2, subd. (b).) If a person who receives an administrative order refuses to submit to the tests and fails to seek judicial relief from the order prior to specified times, "the court may resolve the question of paternity against that person or enforce the administrative order if the rights of others or the interest of justice so require." (*Id.*, subd. (d).) The Department did not issue an administrative order in this case and thus section 7648.2 does not apply. Here, the court ordered genetic testing of persons who were not parties to the proceeding.

excluded his paternity. (Evid. Code, §§ 500, 550, subd. (b).) That he did not do, and therefore the court could not and did not make the mandatory finding which section 7647, subdivision (a)(3) requires.

■ Without that finding, the trial court lacked authority to set aside the default judgment of paternity. A court with jurisdiction of the subject matter and the parties does not enjoy unconstrained power to act in a cause. Notwithstanding this fundamental jurisdiction, there are circumstances in which a court has *no power* to act except in a certain manner, or to render certain kinds of relief, or to act in the absence of certain procedural prerequisites. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942].) "Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of stare decisis, are in excess of jurisdiction, in so far as that term is used to indicate that those acts may be restrained by prohibition or annulled on certiorari." (*Id.* at p. 291, italics omitted.)

■ Section 7647, subdivision (a) is an express statutory declaration defining the power of the family law court to vacate or set aside a paternity judgment. The granting of Clark's motion to vacate exceeded the court's defined power because a key condition restricting its power, namely a finding on the evidence that genetic testing demonstrated that Clark was not the biological father of Dennis, was not fulfilled.

## C. *Proper Ways to Proceed*

In April 2007, the trial court directed Holguin to submit genetic samples for paternity testing, per written notice from the Department. The court also ordered her to "bring" Dennis to provide samples as well. However, Holguin and Dennis were not parties to the initial action, and neither was served with Clark's motion or joined as a party to his proceeding under section 7645 et seq. Holguin was not served with a summons and complaint in the original action; nor is there any indication in the record that she ever made a general appearance. Dennis had turned 18 prior to the September 2007 hearing, but was not even served with notice that the judgment of paternity had been set aside.

■ Although the statutory scheme empowers the trial court to order genetic testing to assist it in determining whether the previously declared father is the biological father of the child (§ 7647.7), this power only extends to parties over whom it has personal jurisdiction (see *In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, 592–594 [7 Cal.Rptr.3d 701] [court must have

personal jurisdiction over parties in marital case in order to adjudicate personal rights and obligations]). The trial court did not have personal jurisdiction over Holguin or Dennis, and thus its attempt to order Holguin to submit to genetic testing and "bring" Dennis for testing as well, had no effect.

■ Discovery from a nonparty may be accomplished through a deposition subpoena. (Code Civ. Proc., § 2020.010, subd. (b).) A deposition subpoena may command the attendance and testimony of the deponent and the production of records and "tangible things." (*Id.*, § 2020.020, subd. (c).) Such a subpoena that commands production of tangible things shall specify any sampling or testing that is sought. (*Id.*, § 2020.510, subd. (a)(3).) Personal service of a deposition subpoena on a deponent who is a resident of California is effective to command any specified testing and sampling, as well as the deponent's attendance at a court session on any issue arising from his or her refusal to produce the specified items. (*Id.*, § 2020.220, subd. (c)(2), (3).)

Clark did not invoke the nonparty discovery procedures outlined in Code of Civil Procedure section 2020.010 et seq. Had he taken advantage of these procedures, Holguin and Dennis as an adult would have been compelled to appear and provide the genetic samples required for paternity testing. Alternatively, the Department could have issued an administrative order requiring Holguin and Dennis to submit to such testing. (§ 7648.2, subd. (b).) Again, it did not.

■ In any event, Holguin could have been, and Dennis as an adult should have been, joined as a party to the proceeding. In any action brought by a local child support agency for support of a minor child, the parent requesting support enforcement services *is not* a necessary party to the action but may be subpoenaed as a witness. (§ 17404, subd. (a).) However, after a support order has been entered in an action filed on or before December 31, 1996, the support agency may join such parent as a party by way of an ex parte application or noticed motion for joinder; on the other hand, either parent may notice a motion for joinder. (*Id.*, subd. (e)(2).)

Dennis, as an adult child, had a personal interest in the paternity judgment such that disposition of the matter in his absence "may (i) as a practical matter impair or impede his ability to protect that interest." (Code Civ. Proc., § 389, subd. (a)(2)(i).) Any such indispensable party who is subject to service of process and whose joinder would not deprive the court of subject matter jurisdiction *shall be joined* as a party to the action. (*Id.*, subd. (a).)

## III. DISPOSITION AND DIRECTION

We reverse the order setting aside the default paternity judgment, as well as any order pursuant to section 7648.4 that has been entered in this case, and remand the cause to enable implementation of proper procedures for obtaining the requisite genetic tests from Holguin and Dennis. Dennis should be joined as an indispensable party to the action. Holguin can be joined as a party as well. Alternatively, the genetic tests from Holguin can be accomplished by resort to the nonparty discovery provisions of Code of Civil Procedure section 2020.010 et seq. Or, the Department can proceed by way of administrative order pursuant to section 7648.2.

Ruvolo, P. J., and Sepulveda, J., concurred.