Filed 8/30/23  In re Z.F.V. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re Z.F.V., a Person Coming Under Juvenile Court Law. | B319442 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 21CCJP05613A) |
| Plaintiff and Respondent, | **ORDER MODIFYING OPINION** |
| v. | **[There is No Change in Judgment]** |
| S.T. et al., | |
| Defendants and Appellants. | |

IT IS ORDERED that the opinion filed in the above-captioned matter on July 31, 2023, be modified as follows:

1.  On page 1, the caption should be deleted and replaced with:

| In re Z.F.V., a Person Coming Under the Juvenile Court Law. | B319442 |
|---|---|
| ———————————————<br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>S.T.,<br><br>　　　Defendant and Appellant,<br><br>M.V.R. et al.,<br><br>　　　Respondents. | (Los Angeles County Super. Ct. No. 21CCJP05613A) |

2.　　On page 1, delete the counsel listing and replace it with:

　　　Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　No appearance for Plaintiff and Respondent.

　　　Leslie A. Barry, under appointment by the Court of Appeal, for Respondent M.V.R.

　　　Marsha F. Levine, under appointment by the Court of Appeal, for Respondent Minor Z.F.V.

There is no change in judgment.

———————————————————————————————

RUBIN, P. J.　　　　　BAKER, J.　　　　　KIM, J.

2

Filed 7/31/23  In re Z.F.V. CA2/5 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Z.F.V., a Person Coming Under Juvenile Court Law. | B319442 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  S.T. et al.,  Defendants and Appellants. | (Los Angeles County Super. Ct. No. 21CCJP05613A) |

APPEAL from an order of the Superior Court of Los Angeles County, Charles Q. Clay III, Judge.  Conditionally reversed and remanded.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant, father S.T.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Respondent, mother M.V.R.

Marsha F. Levine, under appointment by the Court of Appeal, for Respondent minor Z.F.V.

No appearance by Respondent Department of Children & Family Services.

_____

Presumed father S.T. appeals from the juvenile court's jurisdiction and dispositional orders, arguing the court erred when it denied his request to file a motion to vacate the court's parentage finding.

On January 25, 2023, the Department of Children and Family Services (DCFS) submitted a letter to the court stating it would not be filing a brief and that mother was the proper respondent. Respondents mother and daughter filed briefs, asking us to affirm the trial court's order. They argue that there were no exceptional circumstances to justify a continuance, and regardless of the negative paternity test, father received daughter into his home and held her out as his child in satisfaction of the parentage presumption in Family Code, section 7611, subdivision (d).[1]

We conclude the court erred by refusing to allow father an opportunity to brief his motion to vacate. In doing so, we express no opinion on the merits of the motion. We conditionally reverse the jurisdictional findings and dispositional order to the extent they were based on father's presumed father status. We remand to allow father the opportunity to brief a motion to vacate the parentage order.[2]

---

[1] All subsequent statutory references are to the Family Code, unless indicated otherwise.

[2] Section 7646 allows a presumed parent to move to set aside or vacate a parentage judgment if genetic testing shows the presumed parent is not the genetic father. Section 7647 sets out the requirements for the motion. Section 7648 allows a court, after it has considered enumerated factors, to deny the motion if it "determines that denial of the motion is in the best interest of the child."

***FACTUAL AND PROCEDURAL BACKGROUND***

At the inception of dependency proceedings, mother and father were in a four-year relationship and had lived together for three years; they have never married. Mother's infidelity and father's domestic violence (first occurring in 2020) punctuated their relationship. In August 2019, mother gave birth to daughter. Evidence suggests that father was present for the birth. He is named as the father on daughter's birth certificate. Father allegedly told family and friends that she was his daughter and provided for her financially. According to the social worker, father said he had spent significant time with daughter "because mother was out of the home for extended periods of time."

### 1. *Section 300 Petition and Detention Hearing*

On December 9, 2021, DCFS filed a petition pursuant to section 300, subdivisions (a), and (b), alleging father had committed domestic violence against mother and physically abused two-year-old daughter, whom mother failed to protect.

At the detention hearing on December 14, 2021, father neither appeared nor was represented; mother made a telephonic appearance and was represented by counsel. That day, mother had filed a parentage questionnaire indicating she believed father was daughter's father. She checked the boxes stating that father was present for daughter's birth, signed daughter's birth certificate, lived with her at the time of daughter's conception and birth, jointly raised daughter, and held himself out as

3

daughter's parent.[3]  In father's absence, the court reviewed mother's questionnaire and asked whether the parties had requested a parentage finding.  Mother's counsel responded:  "the father was present and I believed signed the birth certificate.  And so I believe, under [section] 7611(d), he qualifies for presumed status."[4]  Not hearing an objection from the absent father, the juvenile court found father to be the presumed father.  The minute order stated:  "The court inquires as to the paternity of the minor.  The court finds [S.T.] to be the presumed father of the minor child."

## 2.    *Father's First Appearance*

On January 25, 2022, father appeared in court for the first time.  His attorney filed a JV-505 form (Statement Regarding

---

[3]    The birth certificate is part of the record on appeal. Father's signature does not appear on the certificate, but he is identified as "father" on it.

[4]    The parties agree there was no evidence before the court that father had filed a voluntary declaration of parentage (VDOP) even though his name was on the birth certificate.  (See § 7573 ["a completed voluntary declaration of parentage that complies with this chapter and that has been filed with the Department of Child Support Services is equivalent to a judgment of parentage of the child and confers on the declarant all rights and duties of a parent"].)  Because the court's parentage finding does not appear to be based on the existence of a VDOP and the parties agree a VDOP was not in evidence below, we consider the significance of the birth certificate in that context.  (See Health & Saf. Code, § 102425, subd. (a)(4) [hospital to include an unwed father's name on a child's birth certificate only if the father and the mother "sign a voluntary declaration of paternity at the hospital before the birth certificate is submitted for registration"].)

4

Parentage) that was signed by the attorney but not by father personally. The place for father's signature was left blank. The form checked boxes stating both that (1) father does not know if he is the parent and requests a DNA test; and (2) he believes that he is the parent of the child and requests a presumed father finding from the court. The form stated that father had told family and friends he was daughter's father and had provided her food, clothing, shelter, and all other necessities.

At the hearing, the court acknowledged father had requested a DNA test and wanted the court to "hold off on any paternity findings." Minor's counsel responded that father had already been found to be daughter's presumed father at the detention hearing. Father's attorney stated that father was not present in court nor represented by counsel when the parentage finding was made. The court asked counsel if father was disputing his familial relationship with daughter. Counsel responded that she had not inquired because father told her he was unsure he was the father and wanted a DNA test.

The court advised father that because he was the only father daughter had ever known, he could still be her presumed father even if they were not biologically related. The court stated the presumed father finding would remain but also ordered DNA testing. The court continued the hearing for adjudication and disposition to March 9, 2022. The hearing was later continued to March 23, 2022 because the parties had not received the DNA test results.

5

### 3. *Father's Oral Motion to Vacate the Parentage Finding and the Court's Adjudication of the Dependency Petition*

The DNA test was dated March 9, 2022, but father's counsel did not receive the results until March 22, 2022, the day before the scheduled adjudication/disposition hearing. The DNA test showed father was not genetically related to daughter.

At the March 23, 2022 hearing, father's counsel informed the court of the negative paternity test. Counsel stated father wished to vacate the presumed father finding and requested a short continuance to brief the issue.

Daughter's counsel did not oppose the continuance, and DCFS made no argument. Mother opposed any continuance, arguing that paternity was not at issue because the DNA results did not affect the presumed father finding. Mother's counsel urged the court to proceed with adjudication and disposition, stating that the court can make visitation orders for father and he can disregard those orders if he chooses.

The court denied the request for a continuance, explaining that "father's status as a presumed parent is not affected by his status as a non-biological father of the minor child, and the two are unrelated in the legal sense that we find ourselves in."

During oral argument on jurisdiction and disposition, father's counsel reiterated his request that the court vacate the paternity finding. Counsel asserted that under section 7646, subdivision (a)(1), a previously established parent may bring a motion to set aside or vacate a judgment establishing parentage when genetic testing reveals that the established parent is not the father of the child.

6

The court again denied father's request to set aside presumed father status. The court concluded the statute did not apply "to a finding made by the court in this context" but rather applied to "a judgment made on the basis of allegations made by the parties." The court also stated "this matter is prejudgment, and 7644 [sic] requires the parties to make a motion to set aside the judgment. There's no motion filed, but there's also no judgment, and so that section does not apply." The court opined the lack of a genetic link to daughter had no impact on its analysis of whether father was a presumed father under section 7611, subdivision (d). Father's motion to continue the hearing to allow briefing a motion to set aside the parentage finding was denied.

The juvenile court found jurisdiction over daughter and sustained the allegations that father had committed domestic violence against mother in daughter's presence and mother had failed to protect daughter from father by allowing him to reside with, and have unlimited access to, daughter. The court granted mother sole legal and physical custody of daughter, with monitored visits for father. The court then terminated jurisdiction.[5]

## DISCUSSION

In their initial briefing on appeal, the parties argued whether the trial court erred in refusing to vacate presumed

---

[5] The record indicates that mother eventually obtained a restraining order against father which did allow father to visit daughter. During the pendency of the case, father had a single visit with daughter, did not seek reunification services, and, according to the social worker, "expressed apprehension" about participating in the case.

father status and proceeding with adjudication/disposition. Although father's opening brief mentioned in passing the court's denial of his request for a continuance to brief a motion to set aside the parentage finding, his appellate brief focused on the merits of the court's ruling on the oral motion. His single captioned argument on appeal was: "The Trial Court's Denial of Appellant's Request to Set Aside Paternity Findings Was Error Under the Facts of This Case." (All capital letters omitted.)

By letter, we requested the parties to brief whether the juvenile court abused its discretion when it denied father's request for a continuance to prepare and file a written motion to set aside presumed father status. (See Gov. Code, § 68081.) In response, father argued the court's denial of the request was an abuse of discretion. Mother asserted the court did not err in denying the continuance. Daughter's appellate counsel observed that, although daughter did not object to a continuance below, she now was joining in mother's letter brief.

We start our analysis with a brief review of parentage findings in dependency cases.

## 1.     *Parentage Findings in Dependency Cases*

In juvenile dependency cases, there are three types of fathers: alleged, biological, and presumed. A presumed father has a familial relationship with the child (alleged and biological fathers do not) and meets one or more of the specified criteria in section 7611. (*In re P.A.* (2011) 198 Cal.App.4th 974, 979–980 (*P.A.*).) Of the three types, "Presumed father status ranks highest." (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801.) "This is because a presumed father, who has lived with a child and treats the child as a son or daughter, has developed a parent-child relationship that should not be lightly dissolved. This type of

8

familial relationship is much more important, at least to the child, than a biological relationship of actual paternity." (*P.A.,* at p. 980.)

Relevant to this appeal, a presumed parent includes someone who "receives the child into their home and openly holds out the child as their natural child." (§ 7611, subd. (d).)  A biological relationship is not necessary to prove parentage under this presumption.  Section 7611 creates a rebuttable presumption of paternity, which affects the burden of proof "and may be rebutted in an appropriate action only by clear and convincing evidence."  (§ 7612, subd. (a).)

In dependency cases, the juvenile court is tasked with inquiring with the mother as early as practicable about the child's presumed or alleged father, and then notifying the presumed or alleged fathers of the proceedings.  (Welf. & Inst. Code, § 316.2, subds. (a), (b).)  Similarly, California Rules of Court, rule 5.635(b) provides that at "the initial hearing on a petition filed under section 300 . . . and at hearings thereafter until or unless parentage has been established, the court must inquire of the child's parents present at the hearing and of any other appropriate person present as to the identity and address of any and all presumed or alleged parents of the child."

After parentage has been established, "a judgment establishing parentage may be set aside or vacated upon a motion by a previously established parent . . . if genetic testing indicates that the previously established father of a child is not the genetic father of the child."  (§ 7646, subd. (a).)  In this statutory scheme, "Previously established father" is "a person identified as the father of a child in a judgment that is the subject of a motion" to set aside or vacate.  (§ 7645.)  " 'Judgment' means a judgment,

order, or decree entered in a court of this state that establishes parentage, including a determination of parentage made pursuant to a petition filed under Section 300 . . . of the Welfare and Institutions Code." (§ 7645.) Section 7647 sets forth the requirements for the contents of a written motion to vacate the judgment establishing parentage, and section 7646 provides a time limit for the motion.[6]

"The court may deny the motion to set aside or vacate a judgment establishing parentage if it determines that denial of the motion is in the best interest of the child." (§ 7648.) In assessing the best interest of the child, the court considers factors listed in section 7648, including: the child's age; the nature, duration, and quality of the relationship between the child and the previously established father; and whether the established father has impaired the ability to ascertain the identity of, or get support from, the biological father. (*Ibid*.) "If the court denies a motion pursuant to Section 7648, the court shall state on the record the basis for the denial of that motion and any supporting facts." (§ 7648.1.)

As one court has observed, the various statutes seek a balance between stability for the child and fairness to a non-biological father: "At the root of the procedures, conditions and considerations detailed in section 7645 et seq. are concerns of fairness to a person adjudged a father who in fact is not the biological father of the child in question. One who questions the

---

[6] Under the facts of this case, father had two years from the date he knew of the presumed father finding to bring the motion to vacate. (§ 7646, subd. (a)(1).) As father requested to file a motion to vacate three months after the parentage finding, time limitations are not at issue.

10

certainty of his paternity as established by a prior judgment now has an avenue for resolving the matter with a scientific answer and attendant legal consequences: With the granting of a motion to set aside and vacate, the previously adjudged father is freed from parental responsibilities as well as support obligations." (*San Mateo County Dept. of Child Support Services v. Clark* (2008) 168 Cal.App.4th 834, 841.)

## 2. *The Court's Discretion to Grant Continuances*

Pursuant to Welfare & Institutions Code section 352, subdivision (a), the juvenile court "may continue any hearing . . . beyond the time limit within which the hearing is otherwise required to be held[.]" "Continuances shall be granted only upon a showing of good cause" and if it is not "contrary to the interest of the minor." (*Id.*, subd. a)(1) & (2).) Continuances are discouraged in dependency cases. (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604.) "In order to obtain a motion for a continuance of the hearing, written notice shall be filed at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance." (Welf. & Inst. Code, § 352, subd. (a)(3).) "We review the denial of a continuance for abuse of discretion." (*In re Giovanni F.,* at p. 605.)

## 3. *The Court Erred In Denying Father a Continuance to Bring a Written Motion to Vacate the Parentage Finding*

Starting with his first appearance on January 25, 2022, father questioned daughter's paternity. At his request, the juvenile court ordered a DNA test. On March 22, 2022, the day before the continued jurisdiction/disposition hearing, father's

11

counsel received the negative test results. Thus, the March 23, 2022 hearing represented father's first opportunity to challenge his presumed father status. He asked the court for a continuance to brief the issue, which was denied. We conclude the court abused its discretion when it found father had failed to show good cause for the continuance.[7]

Two factors weigh heavily in our analysis. First, the court's presumed father finding had been made before father's first appearance in dependency court. That finding appears to be based, at least in part, on incorrect information, e.g. father "signed" the birth certificate and an inference that there was an operative VDOP. Father acted almost immediately when he learned of the negative DNA test. The day after receipt of the DNA test, at the previously scheduled dependency court hearing, father asked for a continuance so he could brief the effect of the negative DNA test on his status as presumed father. This constituted good cause for a continuance.[8]

---

[7] Mother argues under Welfare and Institutions Code section 352, subdivision (b), the disposition hearing pursuant to Welfare and Institutions Code section 361 must occur no more than 60 days after detention unless there is a showing of *exceptional circumstances* requiring a continuance. Since daughter was never removed from mother's custody, Welfare and Institutions Code section 352, subdivision (b) is not applicable. Father need only show "good cause" under Welfare and Institutions Code section 352, subdivision (a).

[8] Even at the hearing when father was present, the evidentiary showing of presumed father status was inconclusive. The JV-505 form that was before the court had been signed only by counsel, not by father.

12

Second, a short continuance was not contrary to daughter's interests under the statute governing continuances in dependency matters. (See Welf. & Inst. Code, § 352, subd. (a)(1) [the minor's interests that the court gives substantial weight to are the "need for prompt resolution of his or her custody status, the need [for] stable environments, and [limiting] the damage to a minor [due to] prolonged temporary placements"].) Daughter's counsel did not object to the requested continuance, implying that minor would not be prejudiced by the brief delay. At the time, daughter was residing in mother's home and would continue to be in that home whether jurisdiction was terminated that day or two weeks later.

The juvenile court denied the continuance for two reasons. First, the court concluded this was not the type of judgment where the established parent could bring a section 7646 motion to vacate. Second, the juvenile court believed the genetic test had no role in its parentage determination after it was proven that father held daughter out as his own and provided for her financially. Neither rationale holds water.

**Section 7646 Applies to Dependency Proceedings.** To the extent the court denied the motion because it was made in the context of dependency proceedings, its reasoning was contrary to the statutory scheme. Section 7645 expressly states that 7646 motions to vacate apply to determinations of parentage made pursuant to Welfare and Institutions Code section 300 petitions. " 'Judgment' means a judgment, order, or decree entered in a court of this state that establishes parentage, including a determination of parentage made pursuant to a petition filed under Section 300 . . . of the Welfare and Institutions Code." (Fam. Code, § 7645.) The court's denial of the

13

continuance on this basis was an abuse of discretion.  (See *In re M.W.* (2018) 26 Cal.App.5th 921, 931 [a court abuses its discretion when it misinterprets or misapplies the law].)

**The Negative Paternity Test, Along with Other Factors, May Provide Grounds For a Motion to Vacate.**  We also conclude the court abused its discretion in finding the genetic testing had no role in its parentage decision.  We agree that a finding that a father is not a biological parent does not automatically negate presumed father status.  At the time of the adjudication hearing, the presumed father finding had already been made and father was not challenging that section 7611, subdivision (d) could never apply to him.  Rather, father sought to use the negative paternity test as a basis to vacate the parentage finding under section 7646.  Section 7646 allows a presumed parent to move to set aside or vacate the "judgment establishing parentage . . . if genetic testing indicates that the previously established father of a child is not the genetic father of the child."  (§ 7646.)  Thus, father's counsel, who only learned of the negative paternity findings the day before the hearing, reasonably was entitled to brief the issue.

Mother argues "Inasmuch as the evidence clearly established that Father had been the only father [daughter] had known and that he had clearly met the requirements to be declared a presumed father pursuant to Family Code section 7611, subdivision (d), the fact that paternity testing had revealed he was not [daughter]'s biological father did not constitute exceptional circumstances requiring a continuance."  Mother misses the point and proposes an incorrect legal standard.  The statute only requires "good cause."  The "exceptional circumstances" standard applies when the child has been

removed from parental custody, a fact not present here. (Welf. & Inst. Code, § 352, subd. (b).)

Father was not given the opportunity to brief, argue, and present evidence about whether the presumed status finding – made in his absence – should be vacated. " 'If parentage findings in dependency cases are to be meaningful. . . , all parties must ensure that the process used by the court to determine parentage in each case is as thorough as the circumstances of the case dictate, and as accurate as reasonably possible.' [Citation.] The well-intentioned desire to provide a child with two parents does not trump the need to make sure that the persons we designate actually are the parents." (*In re D.M.* (2012) 210 Cal.App.4th 541, 555.)

Whether father was properly designated a presumed parent was the issue to be determined by father's motion. In determining whether he was the presumed father, the court would have to consider, among other things, the circumstances surrounding the birth and the preparation of birth certificate, whether father signed a binding VDOP, whether father received daughter into his home and openly held out the child as his own under section 7611, and the weight to be given to any of the factors listed in section 7648. (See also § 7612.) Although there was some evidence on those issues, they were hardly conclusive. Father, for example, had not signed the JV-505 form.

### 4. *Father Suffered Prejudice Requiring Reversal*

"Like most other errors, procedural errors by the juvenile court require reversal only if they result in a 'miscarriage of justice.' (Cal. Const., art. VI, § 13; see *In re Celine R.* (2003) 31 Cal.4th 45, 59-60.)" (*In re Brianna S.* (2021) 60 Cal.App.5th 303, 315.) We may only reverse where we find "it reasonably

15

probable the result would have been more favorable to the appealing party but for the error." (*In re Celine R.,* at p. 60.)

We conclude the denial of a short continuance for father to brief the motion to vacate was prejudicial. There were several contested factual issues concerning daughter's birth and early years. Father was denied the opportunity to address both the factual and legal issues surrounding paternity.

## ***DISPOSITION***

The juvenile court's jurisdictional finding, insofar as it is based on father's conduct as an offending father, and the related dispositional order, to the extent it addresses father, are conditionally reversed. The case is remanded to the juvenile court, which shall provide father an opportunity to brief a motion to vacate the parentage finding. If after considering father's motion, the court denies the motion to vacate, it shall reinstate the jurisdiction and disposition orders, including the order terminating jurisdiction. If the court grants the motion to vacate the parentage finding, the court shall enter a finding of nonpaternity as to father, and strike father as an offending party from its March 23, 2022 jurisdictional findings and as a parent in its dispositional order.


RUBIN, P. J.

WE CONCUR:



BAKER, J.                                    KIM, J.



16